THE NEW ORLEANS, JACKSON, AND GREAT NORTHERN RAILROAD COMPANY v. DAVID W. HURST.

1. NEW TRIAL: EXCESSIVE DAMAGES: ACTIONS SOUNDING IN DAMAGES. — In actions sounding in damages, where the law furnishes no legal rule of measurement, save the discretion of the jury, upon the evidence before them, courts will not disturb the verdict upon the ground of excessive damages, unless it be so flagrantly improper as to evince passion, prejudice, or corruption in the jury.

2. SAME: SAME: WHEN PUNITIVE DAMAGES ALLOWED AGAINST A RAILROAD COM-

APRIL TERM, 1859.    661

New Orleans, Jackson, and Great Northern Railroad Co. *v.* Hurst.

PANY.—In an action by a passenger against a railroad company, to recover damages, on account of the company's agent having conveyed the plaintiff to a point beyond the place of his destination, and then compelling him to leave the cars; the jury are authorized, in assessing the damages, to allow not only just compensation for the injury, but to inflict proper punishment on the defendants for their disregard of public duty; and in such a case they may take into consideration, in adjusting the punishment, the pecuniary means of the defendant.

3. SAME: SAME: CASE IN JUDGMENT.—In this case, the jury gave damages to the amount of four thousand five hundred dollars, on account of the defendant conveying the plaintiff four hundred yards beyond the station at which they had agreed to carry him, and then compelling him to leave the cars against his remonstrance, and contrary to his request that they should back the cars to the station. The defendant moved for a new trial, because the damages were excessive, which was refused. This court, in reviewing the proceedings in the court below, express their regret that the jury had not acted with more leniency, but under the rules of law applicable to the granting of new trials in such cases, they did not feel at liberty to disturb the verdict.

4. PLEADING: FORM OF ACTION: CARRIERS.—The character of an action as to whether it is in tort, or *ex contractu*, must be determined by the nature of the grievance, rather than the form of the declaration; and in suits against common carriers for a breach of duty in failing to put passengers off at the proper station, the courts are inclined to consider the action as founded in tort, unless a special contract very clearly appear to be made the gravamen of the complaint. See *Heirn* v. *McCaughan*, 32 Miss. R. 18.

ERROR to the Circuit Court of Pike county. Hon. John E. McNair, judge.

This action was commenced on the 11th of February, 1858, and the declaration alleges as follows:

"For that, whereas, heretofore, to wit, on the 2d day of January, A.D. 1858, the said defendants being common carriers, and engaged in the carrying of persons for pay, from the city of New Orleans, in the State of Louisiana, to the town of Brookhaven, in the State of Mississippi; and the said plaintiff, on the said 2d day of January, A.D. 1858, being in the city of New Orleans, in the State of Louisiana, and being desirous of travelling on the express or passenger train of said defendant, procured a ticket, for which he then and there paid the price demanded by said defendant, to be carried from thence to Quin's Depot, in the county of Pike, in the State of Mississippi, to which defendant assented. Yet the said defendant, although requested to stop the said train at Quin's Depot, in

said county of Pike, caused the said train to be run beyond the depot at which the plaintiff was to get out, for a considerable distance, to wit, the distance of three-fourths of one mile; and the said plaintiff requested said defendant to back said train to said depot, and said defendant then and there refused so to do; although defendant had contracted to stop said train at said depot, and allow said plaintiff to get off said train; but then and there, beyond the depot aforesaid, did compel said plaintiff to leave said train, to the damage of said plaintiff ten thousand dollars, and therefore he brings his suit."

The defendant pleaded a general denial of the allegations of the declaration, and the cause was submitted to a jury.

On the trial, the plaintiff was examined as a witness, and proved that the defendants were common carriers as alleged, and that on the 2d of January, 1858, he took passage on the train of that day, at New Orleans, for Quin's station, and that he paid the price demanded for the passage. That he informed the conductor in charge of the train, that he wanted to stop at Quin's station, and that the conductor replied, " Very well;" that after leaving Magnolia, which was the next station to Quin's, he again informed the conductor that he wanted to stop at Quin's, and handed him his check. This occurred two miles below Quin's station. The conductor passed back to the hindmost car, and remained there until about the time the train was passing the station, when he passed forward in a hurry; as he was passing, plaintiff said to him, " Where in the d—l are you carrying me to?" He made no stop or reply.

After the train had passed the station about four hundred yards, it was stopped. Plaintiff and the conductor met on the platform, between the passenger and baggage car, when the conductor remarked to the plaintiff, in an impudent manner, " This, sir, is your place to get out;" to which plaintiff replied, " I reckon not." The conductor asked, " Why not?" Plaintiff replied, " Because I have not shipped to this place." About that time, plaintiff's trunk was put out on the side of the road. Plaintiff then requested that the train should be backed to the station. The conducter refused to do this. Plaintiff then demanded that the train should be backed to the station, and threatened to hold the company responsible if it was not done. The conductor still refused to back the train, and

said to plaintiff with an air of authority, if plaintiff did not leave the car, he would carry him on to Summit. Plaintiff then, to prevent being carried to Summit, stepped from the cars, and about that time the train left. Plaintiff further stated, that the track was very muddy, and there was some little rain at the time, though not enough to wet a person travelling the distance plaintiff had to walk. Plaintiff's trunk was a small one, with a handle about the lock. Plaintiff states that he sustained no pecuniary injury.

Plaintiff then proved, by Charles P. Nelson, that he was on the train with plaintiff; that witness did not hear the conversation between the conductor and plaintiff; that plaintiff's horse and buggy was at Quin's station, and that plaintiff had engagements at Meadville on the next Monday (the 2d January was Saturday), and in Woodville on Wednesday, which he would have been unable to meet, if he had gone on the train to Summit.

Plaintiff also introduced in evidence a letter, written by him on the 4th January, 1858, to J. Calhoun, the president of the railroad company, in which he detailed to him the facts stated in his testimony, and asked that the conductor be discharged; and stating, that if he were not discharged, that plaintiff would resort to legal proceedings for redress of his grievances. He also read in evidence the letter of Calhoun in answer to this, declining to discharge the conductor, but stating that he had been reprimanded, and expressing the hope that this would be satisfactory to plaintiff.

The defendant introduced McGrath, the conductor, who stated that witness was duly notified by plaintiff, as the train was approaching Quin's station, that he wished to get off there. Witness, who was then standing on the platform of the hindmost car, pulled the cord of the signal bell, for the purpose of having the train stopped at the station; but observing that the speed of the train was not checked, and supposing that, from some cause, the signal had not been made or observed, he ran forward through the train to the front, and ordered the engineer to stop the train, which he at once did. The train was stopped about four hundred yards from the station, where the grade of the road was heavy; the rails were wet, and it was difficult to start the train on that account. Witness had the baggage of the plaintiff put off: this baggage consisted of a small valise or trunk, with handles in front, which rendered it easy

to be carried by hand.    Plaintiff objected to getting out there, and insisted on the train being backed to the station; but owing to the condition of the track consequent upon the rain, as well as the heavy grade, and also for want of time, witness refused to back the train, and told plaintiff he must get out there or go on to Summit, which was about five miles farther on.    Witness does not recollect of stating to plaintiff his reason for not backing the train; " it was much easier for him to walk back, than for the train to back there."

Witness is not conscious of having spoken to plaintiff " with an air of authority;" and witness was not uncivil or impolite to plaintiff.    Witness supposed at the time that the train was not more than four hundred feet from the station; but has since learned that the distance was four hundred yards.    From the point where the train was stopped, to the station, the cross-ties on this road were not covered, and were at convenient distances apart for walking.    Witness would have treated any other person in the same way he treated plaintiff.    In answer to a question put by plaintiff's counsel, he stated that he did not know whether he would have backed the train for Mr. Lambkin (defendant's counsel) or not, if he had been on the train at that time; and in answer to a question by defendant's counsel, he stated that he does not know whether he would have backed the train or not, if plaintiff had persisted in his refusal to leave the train there.

On cross-examination, he stated that his remarks to plaintiff were intended to induce him to leave the train; and that he had backed the train on that grade, but never from that point; he had backed it ten or fifteen feet, at times, in order to get the cars opposite the platform of the station; he did not try to back the train on the occasion of the plaintiff's leaving it.

This was all the evidence.

The jury found a verdict for the plaintiff, assessing his damages at $4500.

The defendant moved for a new trial—

1st.  Because the verdict was contrary to law and evidence.

2d.  Because the damages were excessive.

This motion was overruled, and defendant excepted and sued out this writ of error.

*J. D. Freeman*, for plaintiff in error,

Cited 2 Am. Railway Cases, 378; 16 John. R. 132; *Coleman* v. *Southwick*, 9 Ib. 443; Redfield on Railroads, § 156, p. 346; 2 Greenl. Ev. 280, *et seq.;* 1 Saunders Pl. & Ev. 136–150–151; Sedgwick on Damages, 76; 15 Mass. R. 493.

*W. P. Harris*, contra,

Cited Sedgwick on Damages, 38; *Heirn* v. *McCaughan*, 32 Miss. R. 18; 30 Ib. 166; Buller N. P. 327; 2 Wills R. 205; *Duberley* v. *Gunning*, 4 Term. R. 651; *Creed* v. *Fisher*, 26 Eng. L. & E. R. 384; *Bell* v. *Morrisson*, 27 Miss. R. 68; *Chenowith* v. *Hicks*, 5 Indiana R. 224.

HARRIS, J., delivered the opinion of the court.

Several causes are assigned for error, in this record, by the plaintiff here, which may all, however, be considered under the first; which is, that " the damages are excessive, and the court erred in refusing a new trial."

The declaration contains a statement of the facts constituting a cause of action, according to our statute. These facts are,—that the plaintiffs in error, being common carriers, defendant in error paid the price demanded by plaintiffs to be carried from New Orleans to Quin's Depot, in the county of Pike, State of Mississippi, on plaintiffs' road. That plaintiffs caused their train to be run beyond said depot; refused to return to said depot, and allow defendant in error to get off said train, and *compelled said defendant to leave said train*, to defendant's damage ten thousand dollars.

To which declaration the general issue, under the statute, was filed, and upon this issue the cause was submitted to the jury in the court below. No exceptions to testimony, or to any ruling of the court, appear in the record.

The single point for our consideration, therefore, arises upon the motion for a new trial. Were the damages, assessed by the jury ($4500), excessive under the circumstances in proof?

It is always matter of grave consideration with courts of the last resort, to disturb the verdict of a jury fairly rendered, upon the evidence before them; and more especially when sanctioned by the

direct judgment of the court before whom it was rendered, on a motion for a new trial.

But, in cases of this character, when the application is based solely on the ground of excessive damages, to warrant the interposition of this court, the verdict must be so flagrantly improper as to evince passion, prejudice, or corruption in the jury.   In personal torts, the courts will look narrowly into the circumstances, as they very rarely grant a new trial for excessive damages.   3 Graham & Waterman on New Trials, 1131, and cases cited.   It is an authority to be exercised with great caution and discretion.   It is the peculiar province of a jury to assess damages, and when, as in actions sounding in damages merely, the law furnishes no legal rule of measurement, save their discretion, under the evidence before them, it is very rare indeed that a court will feel itself justified in setting aside a verdict merely for excess,   It is not enough that, in the opinion of the court, the damages are too high.   It may not rightfully substitute its own sense of what would be a reasonable compensation for the injury, for that of the jury.   The jury are allowed, and indeed it is their duty, in all such cases, where the law provides no other penalty, to consider the interests of society, as well as justice to the plaintiff, and by their verdict, while they make just compensation for the private injury, also to inflict proper punishment for the disregard of public duty.   *Cook* v. *Hill*, 3 Sandf. Sup. Ct. R. 341 ; *Collins* v. *Albany & Schenectady R.R. Co.* 12 Barb. 492; *Schlenker* v. *Risby*, 3 Scam. R. 483 ; *Berry* v. *Freeland*, 1 Zabriskie, R. 183 ; *Thompson* v. *Morris Canal & Bkg. Co.* 2 Harrison's R. 480 ; *Bodwell* v. *Osgood*, 3 Pick. 379 ; *McNamara* v. *King*, 2 Gilm. Ill. R. 432 ; *Johnson* v. *Moulton*, 1 Scam. 532 ; *Vansant* v. *Jones*, 3 Dana, 464 ; *Worford* v. *Gabel*, 1 Bibb. 247 ; *North* v. *Gatis*, 2 Bibb. 591; *Roberts* v. *Swift*, 1 Yeates, 209 ; *Taylor* v. *Geger*, Hardin, 586; *Deacon* v. *Allen*, 1 South, 338 ; *Vauch* v. *Hall*, 2 Penn. 814; *Webber* v. *Henry*, 1 A. K. Marsh. 345 ; *Rispass* v. *Parmer*, 2 A. K. Marsh. 365 ; *Allen* v. *Craig*, Green's R. 294 ; *Tillotson* v. *Cheatham*, 2 John. R. 74 ; *Whipple* v. *Cumberland Manuf. Co.* 2 Story R. 661 ; *Coleman* v. *Southwick*, 9 John. 45 ; *Southwick* v. *Stevens*, 10 John. 442.

The law has not intrusted the court with a discretion to estimate damages, but has devolved the power on a jury, as a matter of sen-

timent and feeling, to be exercised by them according to their sound discretion, duly weighing all the circumstances of the case, and considering the state, degree, quality, trade, or profession, as well of the party injured, as of him who did the injury. Judges, therefore, should be very careful how they overthrow verdicts, given by twelve men, on their oaths, on the ground of excessive damages. Per Parsons, C. J., *Coffin* v. *Coffin*, 4 Mass. 1; *Sampson* v. *Wood*, 13 Ohio, 365; *Fisher* v. *Patterson*, 14 Ohio, 418; *Clarke* v. *Pendleton*, 20 Conn. 445; Sedgwick on the Measure of Damages, 39 *et seq.*, and authorities cited.

The cases, both English and American, while fully admitting the power and discretion of the court, uniformly concur in the doctrines above laid down.

Our own court has sanctioned the same doctrine, in *Bell* v. *Morrison*, 27 Miss. R. 68; 31 Ib. 156; 32 Ib. 1.

It is insisted, however, that in this case the declaration is based on an alleged breach of contract; that no special damages are laid in the declaration, and none were proven on the trial; but, on the contrary, the defendant in error himself stated and admitted, that he had sustained no pecuniary injury by the act complained of.

Under our system of pleading, the *formal* distinctions between actions are abolished, and the declaration states the *facts* which constitute the cause of action, plainly, distinctly, and substantially. In determining, therefore, the character of the action, we look to the substance of the whole statement, and not to the mere formal language in which it is expressed. We have regard to the *facts* constituting the cause of complaint, and afford the plaintiff the most ample redress and relief which the *facts* will justify, consistent with a due regard to the rights of the defendant. It is the policy of our system to trammel the rights of the parties as little as possible, by the technicalities of mere form, but so to shape the pleadings, as to bring before the jury the very right of the matter in issue between them, without unnecessary delay or expense. Hence, when the *facts* are plainly and distinctly stated, the action will be regarded as either *in tort* or contract; having regard, first, to the character of the remedy such facts indicate; and second, to the most complete and ample redress which, upon the facts stated, the law can afford.

The character of the action must be determined by the nature of the grievance, rather than the form of the declaration.

And in cases of this character (against common carriers), the courts are inclined to consider it as founded in *tort*, unless a special contract very clearly appear to be made the gravamen and object of the complaint in the declaration. These doctrines are very clearly and distinctly announced in the case of *Heirn* v. *McCaughn*, 32 Miss. R. 39, and the authorities cited, and meet our unqualified approbation.

The case before us presents, under these views, the inquiry whether this declaration seeks to recover damages for the breach of the contract stated therein, or whether the wrong and injury complained of was, that the defendant in error, after acquiring the right to travel on plaintiff's cars, by contract, to a certain depot, while lawfully in the enjoyment of that right, was "*compelled*" to leave said cars at a distance from the place of his destination, by the defendant?

The contract is stated as inducement to the action; as the foundation of defendant's right to be on the cars; to show that defendant in error was lawfully there. The declaration next shows that, without the consent and against the remonstrance of the defendant in error, he was forcibly carried beyond the point where it was the plaintiff's duty to have allowed him to stop. The declaration next shows a further violation of defendant's rights and plaintiff's duty, in the fact that, after request by defendant, plaintiff refused to back the train to the place where it should have stopped. And lastly, the declaration shows that plaintiff in error *compelled* defendant *to leave the train*, at a great distance from the place he should have been allowed to get off.

Here is not only a breach of contract, and a violation of public duty, by the plaintiff in error as a common carrier, but a wilful and forcible wrong. The case is, therefore, much stronger for the defendant in error, than were the facts in the case of *Heirn* v. *McCaughn*, 32 Miss. R. 1. A violation of a general duty to the public was, in that case, regarded as sufficient to determine the character of the action, as one founded in tort and not in contract, and sufficient to authorize the jury in awarding exemplary damages. The decision in that case is conclusive of the question presented in

this, as to the form of the action, as well as the right of the jury in such cases to protect the public by punitive damages, against the negligence, folly, or wickedness, which might otherwise convert these great public blessings into the most dangerous nuisances.

We can but regret that, under the circumstances of this case, the great principles of law and punitive justice had not been administered in less rigor by the jury, to whom their vindication is wisely committed by our system; but after all the lesson may be, perhaps, the more salutary, in preventing similar occurrences under circumstances of less palliation. It settles the rights and duties of all parties in interest, and evinces the estimation in which courts and juries hold them. Indeed, when we remember that pecuniary punishment becomes harsh or lenient, excessive or only adequate to the end in view, according to the means or ability of the offender, we are not prepared to say that the damages in this case may not be justified, as the result of a wise judgment. But our regret is, to observe the least antagonism, when mutual kindness, respect, and good will, are so necessary to the mutual benefits and enjoyments, to be derived from these great works of general interest.

Judgment affirmed.

HANDY, J., being interested as a stockholder in the company of the plaintiff in error, did not sit in this case.