CHARLES McGINNIS, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 5, 1886.

1. PLEADING — PETITION — CAUSE OF ACTION — DAMAGES — CASE ADJUDGED.—In an action against a railroad company for damages, for a wrongful ejection from defendant's cars, the contract with defendant's agent in the purchase of a passenger ticket, is set out in the petition as matter of inducement, as the foundation of plaintiff's asserted right to be on defendant's train, from which, as matter of law, springs the obligation of defendant carrier, with averments of breach of contract by failing in its duty in this respect. *Held,* that the matters in issue are properly and substantially set forth.

2. CORPORATIONS—ACTS OF, BY AGENTS—EFFECT OF, AS TO PERSONS INJURED—CASE ADJUDGED.—Under the evidence in this case, the agent who sold the ticket was, *pro hac vice,* the corporation in performing the act. And the corporation — this legal entity — was present, aboard of the train in the person of the conductor. It was the corporation that sold the ticket, and it was the same corporation putting plaintiff off its train, because it had made the mistake, if any, which gave apparent color to the right of ejection. It committed this tort as surely as it made the contract.

3. ——— ——— DUTIES OF TOWARD PASSENGERS.—The doctrine is now well settled that while the right may be accorded to such common carriers, to make all needful rules and regulations which are reasonable for the guidance of its agents in managing and conducting its trains, with power of expulsion therefrom of any passenger who wilfully violates such rules, yet, this right must be exercised, always, if not in subordination to, in connection with other rights secured to the passenger, who is entitled, by his contract, to be on the train as a passenger. Among these recognized rights of the passenger, is not only to be safely and promptly carried to his destination, but to be treated by the servants and agents of the carrier with kindness, respect, courtesy, and due consideration, and to be protected against insult, indignity, and abuse, from both the agents and other passengers.

4. ——— VIOLATION OF SUCH DUTY—DAMAGES.—Where duties, such as are indicated above, are violated, the injured party is entitled to a measure of damages that will compensate somewhat for the wounded feelings, and secure the public against a repetition of the wrong.

5. EVIDENCE—COMPETENCY—REGULATIONS OF RAILROAD COMPANY AS TO TICKETS.—The regulations of the railroad company, and the instructions to the conductor as to receiving tickets, are evidence competent to show the necessity and reasonableness of such regulation, and as bearing upon the question of the conductor's good faith or malice.

6. PRACTICE—INSTRUCTIONS—RULES PROPERLY GOVERNING—CHARACTERISTICS OF.—An instruction ought not to refer the jury to the pleadings; it is the duty of the court to tell the jury what are the essential facts to be found under the pleadings. Facts should not be assumed in them which are in issue, but stated as qualified by the evidence. As to the measure of damages, it should not contain comment on evidence or mere discussion, but state the rules of law applicable under the evidence, and what they should take into consideration in estimating the damages. Nor should an instruction ignore any issue, or present the real issue, otherwise than impartially.

APPEAL from Cole Circuit Court, HON. E. L. EDWARDS, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action to recover damages occasioned by the wrongful act and conduct of defendant's conductor toward the plaintiff, as a passenger on one of defendant's passenger trains. The petition alleges, substantially, that on or about the third day of July, 1883, the plaintiff, who resided at Jefferson City, Missouri, applied to the agent of defendant, at said station, for a commutation ticket to St. Louis and return, the defendant then offering for sale what was known as fourth of July excursion tickets from that point to St. Louis and return. That said agent then presented him such ticket, for which plaintiff paid the established rate of fare; that the ticket so delivered by said agent entitled plaintiff to take passage on that day on defendant's cars from Jefferson City to St. Louis, and to return on the same not later than the fifth day of that month; that he so went to St. Louis, and on the evening of the fourth of July he took passage on defendant's regular train at St. Louis to return to

his home; that after they had left St. Louis, defendant's conductor came along collecting tickets, and demanded of plaintiff his ticket, whereupon plaintiff presented him his said ticket, but that defendant unlawfully, wilfully, and insultingly, did expel and eject plaintiff from its said car in a disgraceful manner, and used boisterous, insulting, and threatening language to plaintiff, and expelled him from its car in the night time and in a strange place, and refused to carry him according to contract, etc., and that by reason of the expulsion, and the insulting, impudent and threatening language used toward him, he has been damaged in the sum of five thousand dollars. The answer, *inter alia*, pleaded that on the occasion in question it became the duty of the conductor to collect a ticket of fare from the plaintiff, as such passenger, and that when he demanded of him his ticket, he presented to him a special limited ticket, which, by its terms, was void after the date expressed therein; that this date had the appearance, and the conductor had reasonable cause to believe that it had been tampered with and changed from July 3 to July 5; that it was agreed that if plaintiff would pay his fare, amounting to $3.75, the conductor, on arriving at Jefferson City, would refund his fare, if the agent there would state that the ticket had not been altered; that plaintiff paid said fare, and was carried to Jefferson City; that when presented to the agent he stated that July 5 was the correct date, and that the appearance of alteration in the ticket was the result of the agent's haste in making it out, and a defective pen; that thereupon defendant tendered to plaintiff the amount of the fare so collected from him by the conductor, which plaintiff refused to accept; that the conductor acted in compliance with the reasonable rules of defendant then in force, to which the conductor was subject.

The replication tendered the general issue.

There is little, if any, controversy in the evidence up

to the occurrences between the plaintiff and the conductor about the rejection of the ticket. Touching this issue the plaintiff's evidence tended to show that when he presented his ticket to the conductor, the latter remarked gruffly: "This ticket has been tampered with; the date has been changed from a 3 to a 5." To which plaintiff replied: "I do not know about that; that is the way it was when I bought it; if it is wrong, it is the fault of the agent who sold it to me." Thereupon, the conductor took the ticket with him, and returning shortly afterwards to plaintiff, said he had consulted one of the officers of the road, and he (the conductor) could not accept the ticket, and plaintiff must pay his fare. This the plaintiff declined to do, on the ground that he had once paid his fare; whereat the conductor again told him he must pay or he would put him off.

The plaintiff testified that the conductor was "gruff in manner, and rough in his speech," and that the conductor said to him, "the ticket was forged or tampered with, and that if he (plaintiff) did not alter it, some one else did."

Plaintiff also said to the conductor: "What is the use of your getting so hot about it?" and told him if he would look at the other side of the ticket he would see from the stamp on it, if he was not drunk or crazy, that it was sold on the third instant. As the conductor turned it over, the plaintiff snatched it from his hand, remarking that if the conductor would not carry him on it he was smart enough to keep his ticket. The conductor told him he would put him off at Webster, the next station, and that he must pay him forty cents, the fare from St. Louis to that point. On nearing the station, the conductor called to a brakeman, and told him the plaintiff was to be put off there. When the car stopped, the plaintiff, to avoid forcible expulsion, left the car, followed by the conductor, and passed out onto the station platform; that it being in the night, and he a stranger in the place, he concluded to re-enter the car and pay his fare,

which he did. The conductor said to him, in the controversy, that if his ticket was all right he could get his money back on reaching Jefferson City. The agent was not at his station on arriving at the depot, so nothing more occurred.

Afterwards, the company, being satisfied that the mistake, if any, about the ticket was committed by the agent, made tender to plaintiff, before suit was brought, of the amount of fare collected from him by the conductor, which the plaintiff declined to accept. The ticket agent testified that he attributed the apparent blur in the figure five to his being in a hurry, and using a pen that had something on it.

The conductor testified that the ticket, when presented, had the appearance to him of having been altered, and that under the instructions then in force from the company, he declined to accept it, and demanded the fare; that he showed the ticket to another conductor of defendant's road, and to another party, who was an expert, but having some employment under defendant, who pronounced it spurious; that he acted in good faith, and used no offensive language, and no force in expelling plaintiff from its car; and that he proposed to plaintiff before he left the car that if he paid his fare he would refund it to him if the agent at Jefferson City said it was all right.

Defendant offered to introduce evidence to the effect that under its rules in force, and instructions thereunder to its conductors, agents were not to issue such tickets to passengers, but to cancel and return the same to the general office; that no changed or altered tickets were permitted to go into the hands of passengers, and that conductors were not permitted to receive them; that altered tickets are among the common devices for defrauding the company by "scalpers" and others, and that such regulation was necessary for the proper protection of defendant.

On plaintiff's objection this evidence was rejected.

Under the instructions, to be hereafter noticed, the jury returned a verdict for plaintiff, assessing his damages at five hundred dollars. Defendant has brought the case here by appeal.

SMITH & KRAUTHOFF, for the appellant.

I. The court erred in excluding the rules and regulations of the defendant company, as offered to be proved. It is the right of a railroad company to make such reasonable regulations, and to enforce them. They are a *part* and *condition* of the contract. *Logan v. Ry.*, 77 Mo. 663; *Johnson v. Ry.*, 46 N. H. 213; *Claybrook v. Ry.*, 19 Mo. App. 432; Hutch on Car., sect. 587; Angell on Car. (5 Ed.) sects. 525, 609; 2 Rorer on Railroads, 978; *Walker v. Ry.*, 15 Mo. App. 336; *Bradshaw v. Ry.*, 135 Mass. 407; *Frank v. Ingalls*, 42 Ohio St. 560; *Railroad v. Chastine*, 54 Miss. 503; *Cheney v. Ry.*, 11 Met. 121.

II. The court erred in overruling defendant's demurrer to the evidence. The action was in tort, and grounded upon alleged wrongful acts of the conductor. It was the duty of this officer to enforce the regulations of the company. If these were valid, no right of action can be founded on an act done in their proper and reasonable enforcement. The plaintiff having forced the conductor to eject him by his persistent refusal to comply with the demand for fare, cannot make this ejection a ground for recovery. *Townsend v. Ry.*, 56 N. Y. 295; *Logan v. Ry.*, 77 Mo. 663; *Frederick v. Ry.*, 37 Mich. 342; *Yorton v. Ry.*, 54 Wis. 234; *Railroad v. Griffin*, 68 Ill. 499; *Bradshaw v. Ry.*, 135 Mass. 407; *Railroad v. Fleming*, 14 Lea. 128; *Railroad v. Wright*, 68 Ind. 586; 3 Wood on Railway Law, 1439. The plaintiff having sued in tort for the alleged wrongful act of the conductor, could not recover damages resulting from the mistake of the ticket agent. *Marshall v. Ry.*, 78 Mo. 610; *Townsend v. Ry.*, 56 N. Y. 295.

III. The court ought to have instructed the jury, as

asked by defendant, that there could be no recovery of exemplary damages in this case. At most, the plaintiff was only entitled to be compensated. There are here none of the elements essential to the allowance of exemplary damages, as fraud, malice, oppression, wantonness. *Trigg v. Ry.*, 74 Mo. 147; *Marshall v. Ry.*, 78 Mo. 610; *Jenkins v. Fowler*, 24 Pa. St. 308; *Railroad v. Hoeflich*, 62 Md. 300; *Claybrook v. Ry.*, 19 Mo. App. 432.

IV. The verdict is excessive, even if plaintiff was entitled to recover exemplary damages. *Trigg v. Ry.*, 74 Mo. 147; *Marshall v. Ry.*, 78 Mo. 600; *Railroad v. Devin*, 86 Ill. 286.

V. The entire series of instructions given for the plaintiff should have been refused, as without any evidence to support them, and taken separately, they are misleading. Those asked for defendant should have been given. The court ought to have taken the case from the jury.

WHITE, EDWARDS & DAVISON, for the respondent.

I. In offering the regulations in evidence, the object and competency was not shown to the court in answer to objections of plaintiff. Otherwise, the court might have admitted the testimony.

II. The traveling public have rights and interests which should not be jeopardized by the acts of a conductor not performing his duty. *Nat v. Clarke*, 1 Clifford, 145; *Railroad v. Dunn*, 19 Ohio, 162; *Penter v. Ry.*, 55 Mo. 202; *Railroad v. Rogers*, 38 Ind. 116; *Railroad v. Young*, 21 Ohio, 518.

III. Exemplary damages should have been given. There is no law that gives employes and managers of railroads any right to treat passengers harshly. *Mattel v. Ry.*, 57 Mo. 18; *Railroad v. Rogers*, 30 Ind. 116; *Perkins v. Ry.*, 55 Mo. 202.

IV. The sale of a ticket to a passenger is a contract to carry him, and companies have no right to make rules

based upon discriminating conditions. 13 Am. Rep. 162 ; see, also, *Davis v. Ry.*, 53 Mo. 339.

V. The court did not err in the instructions. Certainly not as to the measure of damages. *Railroad v. Rogers*, 38 Ind. 116. One of the grounds for assessing of exemplary damages is often because the corporation retained the servant in their employment after notice of his conduct. *Perkins v. Ry.*, 55 Mo. 214 ; *Railroad v. Burke*, 53 Miss. 290.

VI. The case of *Logan* (77 Mo. 603), is in no way analogous to this case; so the *Marshall case* (78 Mo. 610) is very different from this.

VII. It is immaterial as to the good faith and honest belief under which the conductor acted. Defendant is not excused even where it is shown that the conductor was acting under mistake. *Tower v. Grace*, 57 Mo. 22 ; *Higgins v. Ry.*, 46 N. Y. 23.

VIII. The defendant's instructions were properly refused. All the law asked by him was contained in the last instruction for him, and he certainly cannot complain.

PHILIPS, P. J.—I. The question most pressed upon our consideration on this appeal is, as to the form of the action, and the proper measure of damages. The insistance of appellant is that the petition counts upon the tort of the conductor for a wrongful ejection from the cars, and as the conductor was acting in the line of duty in declining to accept the ticket pursuant to the regulations and instructions from his principal, and the fault, if any, of the defendant, was that of the ticket agent, the petition should have counted upon the ticket agent's negligence, in which case, the only damage recoverable would be the price of the fare collected from St. Louis to Jefferson City, there being no evidence of other loss or injury, and as that sum was tendered him before institution of suit, the plaintiff would not even be entitled to recover costs.

If the premises assumed were correct, the rulings of our supreme court would, perhaps, sustain this contention.

Under our system of practice there ought to be no controversy as to the character of this action. The formal distinctions, which prevailed at common law between actions, are abolished. The declaration is required only to state, in plain and concise terms, the substantive facts constituting the cause of action. To determine the character of the action regard is had to the substance of the whole statement, rather than to the form of expression. Relief is administered according to the substantial facts.

The contract with the agent at Jefferson City is set out in the petition as matter of inducement, as the foundation of plaintiff's asserted right to be on defendant's train, from which, as matter of law, as applied to the instance of a common carrier of passengers for hire, springs the obligation of defendant to safely and properly carry the plaintiff, and to treat him, while on its train, with respect and kindness. The gravamen of the complaint is that defendant failed in its duty in this respect by treating him with disrespect, abuse and insult, and wrongfully ejecting him, and refusing him passage on his ticket. Manifestly enough, therefore, the matters at issue were, was there such contract evidenced by the ticket, under which plaintiff took passage on defendant's train? second, did defendant, in any of the given particulars, violate its duty to the defendant, to his injury? and, third, what is the proper measure of damages for the wrong done?

· II.    That defendant did sell the ticket to plaintiff, in the form as presented by him to the conductor, is not disputed. If there was any defect in it, it was not the fault of the plaintiff. He paid the money as required, and in taking the ticket he had a right to rely upon the agent to give him a ticket expressive of the contract, in so far as it might evidence his right to be carried within

the time contracted for.   *The New Orleans Ry. Co. v. Hurst*, 36 Miss. 660.

The agent who sold the ticket was, *pro hac vice*, the corporation in performing the act.   And the corporation, this legal entity, was present, aboard of the train, in the person of the conductor.   It was the corporation that sold the ticket, and it was the same corporation putting plaintiff off of its train because it had made the mistake, if any, which gave apparent color to the right of ejection.   As said by Ch. J. Ryan, in *Craker v. Ry. Co.* (36 Wis. 674): "*Quoad hoc*, this corporation and this passenger, the corporation was present on this train to keep and to care for her (the passenger) represented by the officers of the train, who possessed, *pro hac vice*, the whole power and authority, and were the living embodiment of the ideal entity which made the contract, was bound to keep it, and is appellant here to contend that it has no responsibility for the flagrant violation of the contract, which the respondent paid it to make and to keep, by its sole present representative appointed to keep it on its behalf.   Like the English crown, it lays its sins upon its servants, and claims that it can do no wrong. We cannot bend down the law to such convenience.   The appellant tortiously broke this contract as surely as it made it; committed this tort as surely as it made the contract."

III.   It may be conceded, for the purposes of this case, that the regulations of the company, and its instructions to the conductor, justified him, if the ticket came within the terms of the regulations, in rejecting it and demanding the fare, yet that fact did not, and ought not, to do away with the contract, nor absolve defendant from its liability for the violation of any of the obligations arising thereon.   *Palmer v. Ry. Co.*, 3 S. C. (N. S.) 580; *Malecek v. T. G. & L. Ry. Co.*, 57 Mo. 22; *The N. O., etc., Ry. Co. v. Hurst, supra.*

It may be further conceded to appellant, on the authority of *Trigg v. Ry. Co.* (74 Mo. 147), and *Marshall*

*v. Ry. Co.* (78 Mo. 610), that if the regulation existed, and the ticket presented the appearance of having been altered in any material respect, and the conductor honestly believed it came within the scope of his instructions, he was justifiable in rejecting it, and ejecting plaintiff on his refusal to pay the customary fare; yet, plaintiff would be entitled to recover in this action, provided the other facts alleged in the petition existed. This brings us to the real practical question involved in this case. The doctrine is now well settled, I take it, that while the right may be accorded to such common carriers to make all needful rules and regulations, which are reasonable, for the guidance of its agents in managing and conducting its trains, with power of expulsion therefrom of any passenger who wilfully violates such rules, yet this right must be exercised always, if not in subordination to, in connection with other rights secured to the passenger who is entitled by his contract to be on the train as a passenger. Among these recognized rights of the passenger, is not only to be safely and promptly carried to his destination, but to be treated by the servants and agents of the carrier with kindness, respect, courtesy, and due consideration, and to be protected against insult, indignity and abuse from both the agents and other passengers. This is too well established to require citation of authorities. Story, J., in *Chamberlain et al. v. Chandler* (3 Mason, 246), forcibly expresses this rule in respect of common carriers by water, which differs little in the principle from that of carriers by rail: "It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor, which constitutes the charm of social life, for that attention, which mitigates evils without reluctance, and that promptitude which administers aid to distress. * * * It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks

on them as unworthy of its cognizance.   The master is at
liberty to inflict the most severe mental sufferings, and
yet, if he withholds a blow, the victim may be crushed
by his unkindness.   He commits nothing within the reach
of civil jurisprudence.   My opinion is that the law in-
volves no such absurdity.   It is rational and just.   It
gives compensation for mental sufferings occasioned by
acts of wanton injustice, equally whether they operate
by way of direct, or of consequential injuries.   In each
case the contract of the passengers for the voyage is in
substance violated, and the wrong is to be redressed as a
cause of damage."

If the law be that the passenger is entitled, even
while being dealt with by the agent pursuant to regula-
tions, to respectful and courteous treatment, and protec-
tion against insult and indignity, of what avail is this right
to him, unless the law, in some apt, prompt and vigorous
mode, compels the observance of it?   Of what avail is the
right, if, as contended for, the only penalty be compensa-
tion for actual, tangible loss?   The only rational answer
the law can make to such inquiry must be an appeal to
the wise, temperate discretion of juries, under judicial
guidance, to award to the injured, the outraged passen-
ger, a measure of damages that will compensate some-
what for the wounded feelings, and secure the public
against a repetition of the wrong.

IV.   In looking at the evidence of the plaintiff, what
do we find disclosed by this record?   When the conduc-
tor looked at the ticket, if it presented evidence of alter-
ation, what more was required of him, by a proper sense
of fealty to his employer and of consideration for the
rights and feelings of the plaintiff, than to inform him
that his ticket had the appearance of being altered, and
that as his instructions from his master were not to re-
ceive such a ticket, he would have to request the payment
of fare?   Instead of this genteel course, at the very out-
set, with "gruffness of manner and roughness of speech,"
he announced unhesitatingly that the ticket had been

tampered with and the date changed. The language, to say nothing of the manner of utterance, imputed fraud, if not forgery, without sending along with it the antidote that he did not intend to impute the fraud to plaintiff. The utterance was well calculated to attract to the passenger the attention of other passengers, and to create the impression that the conductor had caught the plaintiff in some act of irregularity. Not content with this, after interviewing the reputed "officer of the company," he returned to his offensive attack, and said the ticket is forged or tampered with, and if plaintiff did not alter it somebody else did. This was a most "unmanly innuendo," wholly unwarranted by the circumstances, and grossly offensive and insulting to any gentleman of ordinary sensibility and pride.

Comment is made by counsel for appellant on the conduct of the plaintiff, and his statement on cross examination that he was "high-strung." While the law indulges not in sentiment, nor promotes an overwrought and senseless spirit of chivalry, it does have regard to the nobler sensibilities of people of refinement, and a high sense of honor. As said by Tapley, J., in *Goddard v. Ry. Co.* (57 Me. 229): "A man's feelings, self-respect, and pride of character are as much under the protection of the law in such case as his property."

To a man of proper sensibility and self-respect it is always humiliating, in public presence, to be arraigned by a conductor about his right of passage—too many of whom, from an exaggerated notion of authority and an overweening, if not morbid, desire to display it, have an offensive manner on such occasions. But to have a conductor, as was done on this occasion, impute fraud to your ticket, coupled with a suggestion that perhaps you are not free from its perpetration, is insufferably galling. Such a thrust hurts more than a mere physical blow. Words often have poison in them. They burn their hideous image into the soul. And the law, in such relations, allows that the spirit of a good man may be as deeply

wounded as the body. The proffered return of the small sum paid for the trip from St. Louis to Jefferson City was no antidote. And while the company itself, in a certain sense, may be deemed no party to the misconduct of its conductor, it has since done nothing to repair the wrong. So far from reprimanding or disciplining the conductor it has approved his conduct by promoting him in its service. These common carriers owe it to themselves and the public to retain in their employ conductors of prudence and of ordinary politeness and courtesy. Generally these conductors are gentlemen. By making examples of such as violate the just and reasonable rights of passengers the number of worthy and efficient agents will increase; and thereby a better feeling would be established between the carrier and the people. If the jury credited the statement of the plaintiff, we cannot say the amount of damages awarded was excessive. This case is not like those of *Trigg v. Ry. Co.*, and *Marshall v. Ry. Co., supra.*

There was no evidence of indignity and insult in them. Henry, J., in the former case, observed: "Every passenger * * * has a right to expect and receive ordinary civility from all the servants of a railroad company, * * * and if there is any deviation from this standard, it should be on the side of courtesy; and if we were of opinion in this case, that the language or manner of the conductor, connected with the negligence complained of, bordered upon indignity or insult, we would not hesitate to let the verdict stand."

In the *Marshall case* the conductor was guilty of no rudeness nor insult, but seemed to have done what he could, in the performance of his duty, to both the employer and the passenger, to make her comfortable, and to tone down any apparent harshness in obeying the regulations of the road.

V. If the plaintiff himself, in this case, was guilty of any misconduct provocative of the language of the

conductor, it is one among all the circumstances to be considered by the jury in estimating the damages.

VI.   I am of opinion that the court erred in excluding the proffered evidence respecting the regulations of the company, and the instruction to the conductor not to receive such tickets. *Logan v. Ry. Co.*, 77 Mo. 663. It was competent for the defendant to show the necessity and reasonableness of such regulation, if it existed.   And if designed to protect the company against "scalpers" and other impostors, as claimed, it was a reasonable regulation.   If it authorized the conductor to take up a ticket like the one in question, and he acted in good faith, without harshness, indignity and insult toward the plaintiff, the plaintiff ought not to recover in this action, on the authority of the cases, *supra*.   As the rejected evidence, in any event, bore upon the question of the conductor's good faith and malice, it was competent.   It would not defeat a recovery, however, if the facts exist as to the misconduct of the conductor above commented upon.

VII.   Objection is made to certain language of the trial judge before the jury, to the effect that railroads should employ gentlemen as conductors.   This observation was made in overruling objection to some question. While the observation announced a legal truth, and may not have prejudiced the jury, it would be the better practice for trial judges to abstain from such observations, as they are calculated to influence the jury, especially when coming from a judge in whose wisdom and experience the jury would likely have great confidence.

VIII.   The instructions in this case are unnecessarily numerous.   The issues involved are few, and ought to be presented to the jury in a few direct instructions. Without reviewing them in detail, we will consider such as are important, and for the guidance of the court in a further trial.

The first instruction, after setting out certain facts essential to be found to entitle the plaintiff to recover, employs the following language:   "and directed the

plaintiff to leave the train in the manner charged in the petition." It is the well settled rule of practice that an instruction ought not thus to refer the jury to the pleadings. It is the duty of the court to tell the jury what are the essential facts to be found under the pleadings.

Instead of this instruction the jury should be directed : that if plaintiff did purchase the ticket in question from defendant's station agent at Jefferson City, it entitled him to be carried therefrom to St. Louis and return, not later than the fifth day of July, 1883 ; and if the conductor refused to accept the same from plaintiff on the return trip, on the ground that it had the appearance of having been altered; and although the jury should find that the ticket bore upon its face evidence of such fact, and that the conductor was authorized by the rules and regulations of the defendant to refuse such ticket, and to eject the plaintiff from its cars on refusal to pay the customary fare, yet if the jury further believe from the evidence that in dealing with the plaintiff in respect of such ticket the conductor used discourteous, offensive, and insulting language to the plaintiff, his duty to demand the fare is no justification for such conduct, and the jury should find for the plaintiff.

The second instruction should not be repeated, as it in effect told the jury, that the act of ejecting plaintiff from the car " is a circumstance tending to show wilfulness and malice on the part of the conductor." This would or not be so according to the fact whether the expulsion was because of plaintiff's refusal to pay the fare when the conductor was demanding it pursuant to a reasonable regulation, without any attending circumstances of insult, rudeness and indignity.

The third instruction is unobjectionable. While some of the other instructions contain the law, they are more or less conceived upon an improper issue, and should be reformed.

In respect of the measure of damages, there is too much comment on evidence, and mere discussion. The jury should be told simply : that if they find the issues

for the plaintiff, in estimating his damages, they are not limited to the mere question of any actual loss sustained by plaintiff by reason of his expulsion from the cars, and the payment of fare; but if the jury believe from the evidence that the plaintiff was treated with indignity and insult by the conductor the defendant is liable to answer therefor in damages, not exceeding the sum of five thousand dollars, as a compensation for the injury. And in estimating the damages the jury may take into consideration the wounded feelings and mental suffering, if any, of the plaintiff caused by such indignity and insult, being governed by a sound discretion and good judgment, and having regard to all the attendant facts and circumstances in evidence. *Craker v. Ry. Co., supra,* 660-1; *Randolph v. Ry. Co.,* 18 Mo. App. 609.

The third instruction asked by the defendant might be given, provided, the court, on inspecting the regulation in question, can say as a matter of law that it is reasonable and applicable to the facts of this case, as indicated in this opinion.

The other instructions asked by defendant and refused by the court were properly rejected. They ignored entirely the issue as to the rude and offensive conduct of the conductor, or otherwise partially presented the real issue.

For the reasons given in the opinion, respecting the exclusion of evidence and the giving of instructions, the judgment of the circuit court is reversed and the cause remanded. Ellison and Hall, JJ., concur in the result.

Separate opinion of Ellison and Hall, JJ.—We concur in the result. We are of the opinion that the treatment by the conductor of the plaintiff, and the language used by the former to the latter, as shown by the record, were calculated to insult and wound the latter's feelings and were harsh and unnecessary; and that the question should have been submitted by the court to the jury in proper instructions, such as stated in the foregoing opinion, as to whether they were insulting.