**616** SUPREME COURT.

Jacksonville S't R'y Co. v. Chappell, Adm'x, &c.—Statement of Case.

JACKSONVILLE STREET RAILWAY COMPANY, APPELLANT, VS. ADELAIDE M. CHAPPELL, ADMINISTRATRIX, &C., APPELLEE.

1. At the common law an action in *tort* to recover damages resulting from personal injuries received by a passenger through the negligence of a common carrier abated on the death of the plaintiff, and could not be revived by his personal representative. Such is the rule under the statute, (§77, p. 830, McC's. Dig.,) declaring what actions die with the person, and what survive.

2. The test by which a declaration in *tort* for breach of duty as a public carrier is to be distinguished from one *ex-contractu* for breach of contract to carry a passenger safely, stated ; and the declaration under consideration held to belong to the former class.

Appeal from the Circuit Court for Duval county.

The original plaintiff in the court below died pending the action, and after the same was at issue, and, thereupon, his administratrix, the present appellee, suggested his death and applied to have the action proceed in the name of such administratrix, which was ordered. The defendant below moved to vacate this order and that the action be declared abated. This motion was denied and the action was allowed to proceed in the name of the administratrix, to which the defendant excepted. Upon the trial there was judgment for the plaintiff ; whereupon the defendant appealed to this court. The declaration in the case was as follows :

" The plaintiff, Adolpho G. Chappell, by Jno. T. & Geo. U. Walker, his attorneys, sues the Jacksonville Street Railroad Company, a corporation created and existing under the laws of the State of Florida, and under the ordinances of the city of Jacksonville. For that the defendants were common carriers of passengers for hire in

said city of Jacksonville, and received the plaintiff as a passenger to be carried from a point near the corner of Duval and Ocean streets in said city on or about the —— day of November, 1882, to his place of his business at 74 East Bay street, for hire; yet the defendants so negligently conducted themselves in and about carrying the plaintiff that by reason thereof he was greatly and permanently injured, and has been put to expense in endeavoring to be cured of his said injuries, and prevented for a long time from attending to his necessary affairs and business, and deprived of the gains and profits he would otherwise have derived therefrom.

"2. And for that the plaintiff says that the defendant is a corporation owning a street railroad which, at the time of the occurrence hereinafter mentioned, was operated by defendant upon certain streets in the city of Jacksonville, and among others Duval street from its intersection with Hogan street, east to Catherine street, south on said Catherine street to Bay street, and west on said Bay street to its intersection with Bridge street; that the said plaintiff was a passenger on said street railroad, and that by reason of the negligent conduct of the driver of the car in which plaintiff was riding, in starting the team fastened thereto suddenly off, whereby the car was violently shaken, the plaintiff was hurt; that the driver of said defendant's said car did not use due care in reference to starting said team, but that plaintiff did use care.

"3. And for that the plaintiff says the defendant's corporation was a common carrier of passengers for hire in said city on the —— day of November, 1882; that on or about said date the plaintiff approached one of the defendant's cars on Duval street, then in charge of a servant of the defendant, who was the driver thereon, and when plaintiff hailed the said car the driver stopped the same for plain-

tiff to get on board; that plaintiff was then in such a condition physically that he walked with a crutch; that he got upon said car and had reached the inside of the same; that the driver saw him clearly from the time he hailed said car till he reached the same, and after he got inside; that after he had got inside of said car, and while he was in the act of seating himself, but before he had sufficient time to do so, the driver suddenly and without warning started the team attached to said car, which was jerked with great force and violence forward, so that the plaintiff was prostrated upon the floor of said car and very greatly and seriously injured, and has been prevented for a long time from attending to his necessary affairs and business; that the plaintiff was then and still is the head of a family dependent upon him; and his attention to his business was then and is necessary to their maintenance and support; and by reason of having been a long time kept from his business he has been deprived of the gains and profits he would otherwise have derived therefrom. And the plaintiff claims five thousand dollars."

*Fleming & Daniel* for Appellant.

*Randall, Walkers & Foster* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

At the common law the death of either party to an action abated it, and, says Blackstone (M., p. 302, Book 3, Vol. 2,) in actions merely personal, arising *ex delicto* for wrongs actually done or committed by the defendant, as trespass, battery and slander, the rule is that *actio personalis moritur cum persona*, and it never shall be revived either by or against the executors or other representatives. For,

says he, neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury, but in actions arising *ex contractu* by breach of promise and the like . * * the suits * * may be revived against or by the executors ; being, indeed, rather actions against the property than the person, in which the executors have now the same interest that their testator had before.   Chitty, (pp. 77, 78, Vol. 1, on Pleading), after remarking that actions for the breach of a *contract* survive, states " but in case of torts when the action must be in form *ex delicto*, for the recovery of damages and the plea not guilty, the rule at common law was otherwise * * but if the action can be framed in form *ex contractu* this rule does not apply."  * *

" In the case of injuries to the person, whether by assault, battery, false imprisonment, slander or otherwise, if either the party who received or committed the injury die, no action can be supported either by or against the executors or personal representatives, for the statute of 4th Edward, 3, ch. 7, has made no change in this respect.  * * *  At common law in cases of injury to *personal property*, if either party died, in general no action could be supported by or against the personal representatives where the action must have been in form *ex delicto* and the plea not guilty, but if any contract could be implied, as if the wrong doer converted the property into money, or if the goods remained in specie in the hands of the executor of the wrong doer, assumpsit might be supported at common law by or against the executors in the former case, and trover against the executors in the latter."   The statute of Edward provided for a survival of the action to the executor of the testator, whose personal property was carried away or injured and rendered less valuable, and 3 and 4 Wm., 4, ch. 42, sec. 3, gives executors and administrators rights of action for torts to real

or personal estate injured, but not for mere injuries to the person.

Stephen, J., in Newsom Exr. vs. Jackson, 29 Geo., 62, speaking as to what is included under the head of *actio personalis*, says the most satisfactory explanation is that given by Judge Tucker in his commentaries which is, if the cause of action *can* be maintained in form *ex contractu*, it survives, but if it is necessarily in form *ex delicto* it dies with the death of either party, and an action of deceit being necessarily in form *ex delicto* was held to die with the defendant. See also 73 Ill., 215; Tomlin's Law Dictionary, titles—Action, Executors and Administrators; Beckham vs. Drake, 8 M. & W., 846; Drake vs. Beckham, 11 M. & W., 315; Chamberlain vs. Williamson, 2 M. & S., 408.

It was observed in Knights vs. Quarles, 2 B. & B., 102, that if a man contracted for a safe conveyance by a coach and sustained an injury by a fall by which his means of improving his personal estate were destroyed and that property in consequence injured—though it was clear he, in his lifetime, might, at his election, sue the coach proprietor on contract or in *tort*—it could not be doubted that his executor might sue in assumpsit for the consequences of the coach proprietor's breach of contract. Raymond vs. Fitch, 2 C. M. & R., 588.

It may be regarded as settled that under the common law a common carrier can be sued for an injury done to a passenger through its negligence, either in an action of *tort* (trespass on the case) for a breach of its duty as a public carrier—such action against a carrier in this case being founded " upon the custom of the realm, which was but another name for the common law "—or in an action *ex contractu* (assumpsit) upon the passenger's contract with the carrier. Hutchinson on Carriers, §§738, 739, 740; Penn. R. Co. vs. Peoples, 31 O. St., 537. There are certain char-

acteristics distinguishing these two actions, but the only one material here is that the former action does not survive to the personal representative of the passenger, or against those of the defendant, in case of the death of such plaintiff or defendant, but the latter does survive.    Ibid, 743.    In Huff vs. Watkins, 20 S. C., 477, where a plaintiff sued in form *ex delicto*, and the defendant died before judgment, and it was held that the action could not be revived against the personal representatives of the deceased, it was said, that accepting the propositions made by the plaintiff's counsel to be true, "it might be enough to say that this action now proposed to be revived against the executor of Watkins was brought against the testator in his lifetime, not assumpsit on any supposed promise, express or implied, but clearly *ex delicto* for a wrong done.    The action has *already taken form, and we have no authority to change its whole nature in order to revive it* against the executor.    Upon the *face of the record itself* the cause of action arose *ex delicta*, and as it seems to us was buried with the offender."    In Bank of Orange vs. Brown, 3 Wendell, 158, after quoting from Lord Mansfield as follows : "But in most, if not all the cases where trover lies against the testator another action might be brought against the executor which would answer the purpose.    An action on the custom of the realm against a common carrier is for a *tort* and supposed crime; the plea is not guilty ; therefore it will not lie against an executor.    But *assumpsit*, which is another action *for the same cause will lie.*"    Savage, C. J., remarks : "What is here said by Lord Mansfield seems to me to show conclusively that there are two remedies against a common carrier, either of which may be pursued, the one in *tort*, and the other in assumpsit, and no intimation is given that the two actions are to be blended or run into each other in any particular."

If the action presented by the declaration and record before us is an action of *tort* for the breach of duty as a common carrier, it, at the common law, and independent of our statute declaring what actions shall die with the person, does not survive to the administratrix, the appellee in this court  On the other hand, if it is in effect an action of assumpsit upon the carrier's contract with the intestate it, barring the effect of the statute, does survive to the administratrix.

Whether the action in a particular case is to be regarded as one in assumpsit or in case is sometimes a nice question, but it is to be determined by the same rules as in actions for the loss of goods.   Ibid, §794.   The mere allegation in the declaration of the contract or undertaking to carry the plaintiff as a passenger does not determine that the action is upon the contract, and not for the breach of duty.   " In many cases the contract is stated as the inducement or consideration from which the duty, the breach or neglect which is complained of results, and  the *tort* or wrong arising from such breach or neglect of duty is the gravamen of the action.   In such cases the action will be treated as in case, and not in assumpsit.   *   *   When an express or special contract with the carrier is not alleged, nor its breach made the gravamen of the plaintiff's action, it is said the courts will be inclined to treat actions of this kind as founded on the breach of duty, and especially is this true under a system  of pleading in which the formal distinction between actions are abolished and the declaration merely states the facts which constitute the cause of action." Hutchinson on Carriers, §§794, 795 ; Heirn vs. McCanghan, 32 Miss., 17 ; N. O. J. & G. N. R. R. Co. vs. Hurst, 36 Miss., 660.   If there is in the declaration an averment of the promise or agreement to carry, and of a consideration for the promise, the declaration will be construed as upon

the contract, and not for the breach of duty; but the mere allegation of a promise will not give it such character, but will be treated as no more than an inducement to the duty imposed by the common law. Ibid, 744, 745; Smith vs. Seward, 3 Penn. St., 342. There must be an averment of both the promise and the consideration. Corbett vs. Packington, 6 B. & C., 268.

In Pennsylvania Railroad Co. vs. Peoples, *supra*, it was held that where a railroad company agrees for a consideration to carry a passenger over its road, and by its negligence an injury results to the passenger, he may at his election sue upon the contract or in *tort*. " The plaintiff " says the opinion, " had her election to set out the *promise*, its *consideration* and *breach*, and ask judgment, (1st Arch., N. P., 124); or to set out the facts which give rise to a liability in *tort* and pray judgment thereon." Angell on Carriers, 434; 2 Greenleaf on Evidence, §208. The declaration alleged a promise and agreement by the company for a consideration paid it, to carry plaintiff, and it was held to be an action on the contract. In Brotherton vs. Wood, 3 Broderip & Bingham, 54, (7 English Com. L. Reports,) the declaration alleged that before and at the time of the grievances complained of, the defendants were proprietors of a certain stage coach for the conveyance of passengers for hire from Bury  *  *  to Bolton,  *  *  and being so that they received the plaintiff, and he became an outside passenger to be safely conveyed thereon from Bury to Bolton, for hire and reward to the said defendants in that behalf, and that by reason thereof the defendants ought safely to have conveyed or caused to be conveyed accordingly the plaintiff, and then alleges that not regarding their duty in this behalf they so conducted themselves that by and through the carelessness, negligence and unskilfulness and default of themselves and their servants the coach was

upset, and the plaintiff thereby was bruised, wounded and sustained other injuries. It was contended that the statement of the case amounted to a contract, but was held by the exchequer to be an action founded on the custom of the realm. The declaration is very similar in its mode of statement to the first count of the one we are considering.

In the declaration before us there is no averment of any promise to carry, or of any such promise for a consideration, nor of any breach of promise, no statement of any contract or agreement even as an inducement to the averment of the common law duty. It merely states the facts out of which the duty as a common carrier to carry the intestate as a passenger arose, and the negligent performance or breach of such duty, and the injury and expense and damage resulting therefrom. It seems to have been copied from Chitty's precedent of a declaration in *tort* for injury to a passenger. 2 Chitty, p. 492. It is true it states as damages, expenses and loss of time, which naturally create a diminution of the intestate's personal estate; this, however, is no statement of a contract, and a breach thereof as a cause of action, but only of damage sought to be recovered for in the action. I frankly confess that at one time it seemed to me that the first count in the declaration might be construed as laid upon a contract, but a further consideration of the subject, after calling it to the attention of counsel, convinces me that I was in error, and we are all of the opinion that it and the whole declaration can only be treated as one in *case* for a breach of duty by the defendant as a common carrier, and that at common law the action died with the intestate. Of course if there was one count in assumpsit or upon contract it would not, under our system of pleading, be impaired by the fact that the other counts were in *tort*.

This makes it necessary to pass upon our statute as to

the abatement of actions by death of parties. It provides as follows: "Hereafter all actions for personal injuries shall die with the person, to wit: assault and batteries, slander, false imprisonment and malicious prosecution; all other actions shall and may be maintained in the name of the representative of the deceased." McClellan's Digest, §77, p. 830. Statutes are to be construed according to their intent and meaning, and a good rule is this intent and meaning are to be derived from the language used as applied to the subject matter of the enactment. We have in this statute a plain declaration that hereafter all actions for personal injuries shall die with the person, and then after a word (" to wit ") which would properly introduce or precede an enumeration of all recognized actions for personal injuries, or all wrongs resulting in personal injury and for which an action was maintainable, we find an enumeration of only some of the personal wrongs or injuries for which actions dying with the person were maintainable at the common law ; after this follows the declaration, not that all other actions for personal injuries, but that all other actions shall and may be maintained in the name of the representatives of the deceased.

The broad declaration that hereafter all actions for personal injuries shall die is irreconcilable with the idea that the purpose of the Legislature was to make a distinction as to final abatement on the death of a party, between actions for some personal injuries and those for others. The mere omission, from the enumeration, of some of the kinds or classes of actions or wrongs producing personal injuries is attributable, in view of the other language of the statute, more to an intention to use those stated as examples of such actions, injuries or wrongs for which the action dies with the person than to a purpose to make such a discrimination.

No one intending to provide by statute that actions for certain personal injuries should survive to the representatives, and those for others die with the person, would ever use only the language found in this statute. There is nothing indicating an intention to make any such discriminating provisions, or to show that such was the purpose in view. If we assume that the Legislature was ignorant as to just what personal wrongs or injuries actions were maintainable for, and the enumeration gives the full measure of their knowledge on the subject, we still have in the language of the act a plain statement of a clear intention that actions for all personal injuries, whatever they might be, should die with the person.

The intent of the Legislature is not to be collected from any particular expression, but from a general view of the whole act. Judges are to look at the language of the whole act, and if they find in any particular clause an expression not so large and extensive in its import as those used in other parts of the same act, and upon a view of the whole act they can collect from the more large and extensive expressions used in other parts the real intention of the Legislature, it is their duty to give effect to the larger expressions. Potter's Dwarris, 193, 194. Effect is to be given to every clause, section and word, if an effect can be given it. All its parts are to be compared, considered and construed with reference to each other. Ibid, 193, 194, and note 13. "It gives great light to the interpretation of obscure passages * * * to compare them with what goes before or follows in the context." Ibid, 133. It seems to us clear that the purpose of the Legislature, to be seen from a view of the entire act, was that all actions for personal injuries should die with the person. To say that the enumeration of a few personal wrongs or injuries after a *videlicit* changes the plain meaning of the

simple, but strong and broad language preceding, so as to limit it to the particular cases covered by the enumeration, is to give the statute an effect both immaterial and at war with the plain sense of all other expressions in it. It is to expound the act neither according to its letter or its evident meaning. A thing which is within the object, spirit and meaning of a statute is as much within the statute as if it were within the letter of it. Ibid, 179. An action based on a personal wrong or injury other than one of those enumerated is as much within the meaning and even the letter of this act, looking at its context, as one based on a false imprisonment, or other enumerated wrong.

We are of the opinion that at least any action for a personal injury, which did not survive at the common law, does not survive under the statute, and consequently that the action set up by the declaration died with the intestate.

Whether, under the statute, the action, if framed as upon a contract, would, under the circumstances of this case, have died with the intestate, we do not decide, as the declaration is not so framed.

The judgment is reversed.