THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* KINSLEY.

[No. 3,382. Filed April 18, 1901. Rehearing denied June 19, 1901.]

CARRIERS.—*Right of Passenger to Continue Journey after Expiration of Ticket.*—A passenger purchased of a railroad company a ticket entitling him to passage from Lafayette, Indiana, to Muncie, Indiana, and return, "good until July 6th," and having been carried to Muncie in accordance with the ticket contract, he started on his return trip on July 6th. The return coupon, which provided that the passenger should proceed to the intermediate station of Indianapolis over one division of the railroad, there to change cars and proceed over another division to his destination, was punched by the conductor of the first division and returned to the passenger. Passenger arrived at the intermediate station a little before midnight, and entered the waiting-room to wait for the first connecting train, but was denied admission to the train-shed to board the train after midnight, on the ground that the ticket had expired. *Held,* that the ticket entitled the passenger to continue his journey on the train, and that the company was liable for its refusal to carry out its contract. *pp. 136-148.*

SAME.—*Ticket.—Construction.*—In an action against a carrier for refusing to honor a ticket, the construction most favorable to the passenger will be given to a ticket which is ambiguous. *pp. 142, 143.*

SAME.—*Refusal of Carrier to Admit Passenger to Train.—Humiliation.*—Where a passenger is wrongfully denied admission to a train,

the humiliation thereby suffered by the passenger is an element of damages. *p. 149.*

DAMAGES.—*When not Excessive.*—Where the amount of compensatory damages for the wrongful refusal to permit a passenger to enter a train cannot be said to be excessive through improper motives of the trior, it will be permitted to stand. *p. 149.*

From Tippecanoe Superior Court; *W. DeWitt Wallace,* Judge.

Action by John Kinsley against the Cleveland, etc., R. Co., for damages for refusing to honor a ticket. From a judgment in favor of plaintiff, defendant appeals. *Affirmed.*

*J. T. Dye, W. V. Stuart, E. P. Hammond* and *D. W. Simms,* for appellant.

*J. F. Hanly* and *W. R. Wood,* for appellee.

BLACK, J.—The appellee sued the appellant. A demurrer to the complaint for want of sufficient facts was overruled. The appellant answered in one paragraph, a demurrer to which was sustained. The appellant refusing to plead further, and electing to stand by its answer, the court ordered judgment for the appellee. On the appellee's motion and by consent of the appellant the cause was submitted to the court for trial without a jury upon the question as to the amount of damages, which the court assessed at the sum of $100. The appellant's motion for a new trial and its motion in arrest of judgment having been overruled, judgment was rendered for the amount assessed.

The complaint contained averments in substance as follows: The appellant owned, controlled, and operated, under one management, two different divisions or branches of railway, one line extending from Lafayette to Indianapolis, the other from Indianapolis to Muncie, all said places being regular stations for receiving and discharging passengers. A passenger traveling from Lafayette to Muncie or from Muncie to Lafayette over the appellant's route was compelled to change cars from one of said divisions to the other at Indianapolis, where the appellant maintained a depot and

waiting-room, along its road, the tracks there being fenced off from the depot by an iron fence, and access from the waiting-room to the cars being had through said fence by means of gates, at which the appellant kept gatemen to examine the tickets of all persons offering themselves as passengers before permitting them to pass through the gates, the gatemen being charged by the appellant with the duty of accepting or rejecting all persons offering themselves as passengers on its trains. On the 3rd of July, 1897, the appellee purchased of the appellant a ticket entitling him to be carried over said lines from Lafayette to Muncie, with a return coupon thereto attached entitling him to return as a passenger over said lines from Muncie to Lafayette. The return ticket was marked good until July 6, 1897, inclusive. The appellee was accepted as a passenger by the appellant upon its cars at Lafayette July 3, 1897, and was carried by virtue of the ticket upon one of the lines to Indianapolis, where he changed cars, and by virtue of said ticket was carried thence to Muncie. He started on the return trip from Muncie to Lafayette, and was accepted as a passenger by the appellant on its cars at Muncie, at 9:17 o'clock p. m. on the 6th of July, 1897. He presented the return ticket to the conductor in charge of the train, who accepted it, punched it and returned it to the appellee, to be used by him on the division extending from Indianapolis to Lafayette. He arrived at Indianapolis at about 10:40 o'clock p. m. the same night and got off the appellant's train on which he had come from Muncie, for the purpose of changing cars and going upon the appellant's train on the other division to Lafayette, which change he was compelled to make to reach his destination as above shown. The first passenger train out of Indianapolis over the other line for Lafayette, after his arrival at Indianapolis from Muncie, was scheduled to leave at 12:30 o'clock a. m., July 7, 1897, which fact the appellee first learned after his arrival from Muncie. He went into the waiting-room and remained there until the train for La-

fayette arrived, which was a few minutes after 12 o'clock the same night. This train under the appellant's rules was scheduled to stop at Lafayette, for the reception and dis charge of passengers, and was the first train leaving Indianapolis after appellee's arrival from Muncie. Upon the arrival of this train appellee left the waiting-room and presented himself at the gates to be admitted to the appellant's cars as a passenger from Indianapolis to Lafayette. He presented the return ticket, or coupon, that had been accepted by the appellant for his return passage as aforesaid, to appellant's gatekeeper, who, it was alleged, wrongfully refused to let the appellee pass through the gate for the purpose of entering upon the train. The appellee insisted and explained to the gatekeeper that the appellant had accepted the ticket for his continuous passage from Muncie to Lafayette. The conductor of the appellant in charge of the train for Lafayette was called, and he, it was alleged, wrongfully refused to honor the ticket, and informed the appellee that he would not carry the appellee to Lafayette on the train and accept the ticket for his passage, and that if the appellee got upon the train, relying upon the ticket for his passage, he would put him off; and the gatekeeper again wrongfully refused to permit the appellee to pass through the gate to the car, and he was prevented by the gatekeeper and the conductor from entering the car. The refusal of the gatekeeper and the refusal of the conductor to admit appellee to the train, and the giving of such information to him by the conductor were in the presence and hearing of a large number of other passengers assembled about the gate, and caused much humiliation, degradation, and distress of mind to the appellee. It was alleged that by reason of the failure and refusal of the appellant to accept the appellee as a passenger upon the train as aforesaid, and by reason of its failing and refusing to accept and honor the ticket as aforesaid, he was compelled to remain in Indianapolis until the following day at his expense, and was greatly delayed thereby in

his business, all to his damage in the sum of $1,000. Wherefore, etc.

In the answer it was alleged that the ticket and coupon were sold by the appellant to the appellee as a 4th of July excursion ticket and coupon for $4.35, which was only one-half of the rate usually charged for passage over the appellant's railroads from Lafayette to Muncie and return. The form of the ticket from Lafayette to Indianapolis and thence to Muncie was set out, as follows:

"Issued by the Cleveland, Cincinnati, Chicago & St. Louis, R. Co. Big Four route. Fourth of July Excursion, 1897. Going coupon. One continuous passage. Lafayette, Ind., to Muncie, Ind., via short line only. Good only on trains scheduled to stop July 3rd, 4th, or 5th, 1897. Date of sale stamped on back. Void if detached from return coupon. Form J. E. 8." The date of sale of the ticket, July 3, 1897, was stamped on its back. The form of the return coupon attached to the ticket was given, as follows: "The Cleveland, Cincinnati, Chicago & St. Louis R. Co. Big Four route. Fourth of July Excursion, 1897. One continuous passage. (Return coupon). Muncie, Ind., to Lafayette, Ind., via short line only. Good only on trains scheduled to stop until July 6, 1897, inclusive. 3604. Form J. E. 8. E. O. McCormick, Pass. Traf. Mgr." The date of the sale of the coupon, July 3, 1897, was stamped on its back.

It was alleged that the train on which the appellee proposed to take passage did not leave Indianapolis until 12:30 a. m. July 7, 1897, and did not arrive at Lafayette until about 2:30 a. m. of that date. It was also alleged that during the 6th day of July, 1897, the appellant had five separate passenger trains running from Indianapolis to Lafayette, on regularly scheduled and publicly advertised time, stopping at the union passenger depot, in Indianapolis, to receive passengers, and stopping at appellant's depot in Lafayette to discharge passengers; that each of these trains

furnished safe, convenient and speedy accommodations for all passengers desiring to be carried thereon, from Indianapolis to Lafayette; that there was plenty of room, convenience, and accommodation for the plaintiff upon any one of these trains, and the appellant was ready and willing safely, conveniently, and commodiously to carry him on the coupon from Indianapolis to Lafayette on any one of them, and would so have carried him on any one of them, on the coupon, had he applied for passage thereon, which he did not do. It was further alleged, that appellant had no right to deny the appellee passage on the train on which he traveled from Muncie, and the conductor on that train in punching the coupon and permitting him to ride from Muncie to Indianapolis, only accepted the coupon for passage on that train and not for passage on any other train of the appellant, and the conductor's agency in so doing was confined exclusively to that train; that all the appellant's passenger trains, on all its railroads, from the 3rd to the 6th of July, 1897, inclusive, and long before and ever since, ran on regularly scheduled and duly and publicly advertised time, and the appellee by proper inquiry of any of appellant's ticket agents at any of the stations on any of its railroads could have readily informed himself of the arrival and departure of all the trains to and from any stations where the trains or any of them stopped for the reception or the discharge of passengers; that on the 6th of July, 1897, the appellant had on its railroad from Muncie to Indianapolis three passenger trains, which left Muncie and arrived at Indianapolis in time for the appellee to have taken the passenger train of the appellant and to have been carried thereon, on said coupon, to Lafayette on that day; that all said trains from Muncie to Indianapolis and from Indianapolis to Lafayette, on that day, were convenient, commodious, and speedy, such as were then used on first-class railroads in the United States, and the appellant was ready and willing, on that day, to carry the appellee, on the coupon, on any of said trains, had he applied for passage thereon.

Essentially the same question arises under the complaint and the answer, which is whether or not the appellee was entitled to construe the return ticket as he did construe it. Though the gatekeeper and the conductor may have been entirely free from fault as between them and the appellant by reason of their obedience to the rules of the company, this will not suffice to relieve the appellant from liability if, as between it and the appellee, he was entitled upon the coupon to enter the train and to be carried to Lafayette. The railroad company itself prepared the ticket, or token, whereby it indicated the right of the appellee to transportation. It sold him two through tickets, one for a continuous passage from Lafayette to Muncie and one for a continuous passage from Muncie to Lafayette. Going either way it was necessary to change cars in the depot at Indianapolis, where it was proper for passengers to tarry in the waiting-room between trains. For its own convenience and under its own regulations, the appellant used one ticket for both lines, for the one continuous passage. When the appellee, during the life of the coupon, entered the car at Muncie and delivered up to the conductor the coupon, who accepted it from him as a passenger, it was a matter of the appellant's own convenience that the conductor instead of keeping the coupon and procuring the appellee's admission to the connecting train, or of giving him another ticket or token of his right to be carried farther than the end of that conductor's run, punched the coupon and returned it to the passenger to be delivered by him to the next conductor. Of course, the passenger would be under obligation to conform to such reasonable regulations, but his right to passage would be determined by the language of the ticket which he delivered up to the conductor who punched it and returned it to him.

When, under the regulations of the railroad company, the passenger conforming thereto is placed in a situation needing explanation as between him and the conductor, it is the

duty of the passenger to give the needed explanations, and if he do so truthfully, it will be at the risk of the carrier if they be not accepted.

If under the terms of the coupon the appellee had the right, which he claimed, to a continuous passage from Muncie to Lafayette, as in going he had the right to a continuous passage from Lafayette to Muncie, his going into the waiting-room at the Indianapolis depot and his tarrying there outside the gates of the car-shed until the arrival of the next train to Lafayette, did not make him cease to be the appellant's passenger, and as such he had the right at the proper time to return through the gateway for the purpose of taking his place in the car.

The case is not one involving the effect of explanations or directions given to the passenger when he bought his ticket, or oral or collateral agreement or understanding between him and the appellant's officers or agents; but is one where we must resort to the words of the printed ticket which he bought.

The purchaser of a railway ticket has a right to treat it according to its purport. *Brooke* v. *Grand Trunk R. Co.,* 15 Mich. 332. The complaint stated that the return coupon was marked, good until July 6, 1897, inclusive. In the copy of the coupon set out in the answer were the words, "One continuous passage (Return coupon). Muncie, Ind., to Lafayette, Ind., via short line only. Good only on trains scheduled to stop until July 6, 1897, inclusive."

These words were the words of the railroad company, selected by it as the terms regulating the transportation which it sold to the appellee. If the language could be said to be so definitely precise that there could be no difference of opinion as to its meaning, no room for construction, the appellee would be bound accordingly, and the court would be obliged to follow that meaning; but if the language is ambiguous or admits of doubt as to its meaning, it must be given the construction of which it is capable most favorable

to the passenger, and we must look with disfavor upon a construction which would work a forfeiture of a portion of the transportation purchased by him. Elliott on Railroads, §1598; *Evans* v. *St. Louis, etc., R. Co.*, 11 Mo. App. 463; *Auerbach* v. *New York, etc., R. Co.*, 89 N. Y. 281, 42 Am. Rep. 291; *Little Rock, etc., R. Co.* v. *Dean,* 43 Ark. 529, 51 Am. Rep. 584.

By its terms the coupon would not be good on trains not scheduled to stop, but if the holder sought to ride as a passenger on trains scheduled to stop, it would be good until July 6, 1897, inclusive. It was to be used for a continuous passage, which involved the necessary change at Indianapolis from one train to another, both being trains of one company, the one from which the ticket with its coupon was purchased.

The appellee commenced his return journey within the life of the ticket and was seeking to make it a continuous journey. He did not present, and was not provided with, a separate ticket purporting to be good for passage only from Indianapolis to Lafayette good only until July 6, 1897; but he offered the gatekeeper and the conductor the ticket purporting to give the right of passage from Muncie to Lafayette, which, on leaving Muncie, he had presented to the conductor, who had punched it and returned it to the appellee to be delivered by him as the indication provided by the company of his right to be recognized as a passenger upon the connecting train. It can not be said that the ticket showed clearly and without doubt his right to be received upon the connecting train after midnight. The company might easily have made the language of the ticket wholly free from doubt upon this question. Resolving all doubt in favor of the holder of the ticket, we can not say that he, taking the language of the ticket into consideration with the circumstances might not in good faith construe the coupon as indicating a right to a continuous passage from Muncie to Lafayette on the appellant's connecting trains, if he pre-

sented the ticket and became a passenger at Muncie on the train upon which he in fact did take passage. The coupon which he presented at Indianapolis had been punched by the appellant's conductor, and itself indicated to the appellant that it had been presented and used during the limited time, between Muncie and Indianapolis. If it did not indicate the particular train on which it had been so used, this was because the regulations of the appellant were inadequate to that extent, and the truthful explanation of the appellee supplied that information.

The appellant, owning the two connecting railroads, treated them as one line upon its ticket and coupon, and it can not be said that there was no warrant for the assumption on the part of the appellee that the continuous passage was an entirety, commenced by surrendering the coupon on the first part of the journey, though the coupon came again into his possession for the purpose for which, after punching it, the conductor delivered it to him.

In *Evans* v. *St. Louis, etc., R. Co.,* 11 Mo. App. 463, the holder of a ticket which by its terms was to be used on or before the expiration of a specified day, entered upon the transit before midnight of the last day to which the ticket was limited. It was held that he complied with the terms of the limitation and was entitled without further payment of fare to be carried to the end of the journey, though the transit could not be completed until after the expiration of the last day to which the ticket was limited.

In *Auerbach* v. *New York, etc., R. Co.,* 89 N. Y. 281, the plaintiff, on the 21st of September, 1877, purchased a ticket at St. Louis for New York over several railroads mentioned on coupons attached. By its terms the ticket was "good for one continuous passage to point named in coupon attached," and it was stated on the ticket that the selling company acted only as agent for the other roads and assumed no responsibility beyond its own line; that the holder agreed with the respective companies to use the ticket on or before the

26th day of September, 1877, and that if he failed to comply
with the agreement, either of the companies might refuse
to accept the ticket or any coupon thereon and demand the
full regular fare, which he agreed to pay.  He left St. Louis
September 21st, and rode to Cincinnati, where he stopped
a day.  Then he rode to Cleveland, and having remained
there a few hours, he rode to Buffalo, reaching that city
September 24th, and remained there a day.  He had then
used all the coupons but one which entitled him to one first-
class passage over the defendant's road from Buffalo to New
York.  He purchased a ticket over the defendant's road
from Buffalo to Rochester, and upon this ticket rode to
Rochester, where he arrived in the afternoon of the 25th of
September.  Remaining there one day, he entered a car on
the defendant's road on the afternoon of September 26th, to
complete his passage to New York.  He presented the ticket,
with the one coupon attached, to the conductor, who accepted
it, and it was recognized as a proper ticket and was punched
several times, until the plaintiff reached Hudson about 3 or
4 o'clock a. m. September 27th, when the conductor in charge
of the train declined to recognize the ticket on the ground
that it had run out, and demanded fare to New York, which
the passenger declined to pay, and the conductor ejected
him.  The trial court nonsuited the plaintiff on the ground
that the ticket entitled him to a continuous passage from
Buffalo to New York, and not from an intermediate point.
The general term affirmed the nonsuit, on the ground that,
although the plaintiff commenced his passage upon the 26th
of September, he could not continue it after that date on that
ticket.  The court of appeals held that the plaintiff was im-
properly nonsuited.  It was said in the court's opinion that
the plaintiff was bound to a continuous passage over the de-
fendant's road; he was not, however, bound to commence it
at Buffalo, but might commence it at any intermediate
point between Buffalo and New York; also that when on the

26th of September, he entered the train at Rochester and presented the ticket, and it was accepted and punched, it was then used within the meaning of the contract; that it could then have been taken up; that so far as the plaintiff was concerned it had then performed its office; that it was thereafter left with him, not for his convenience, but under the regulations of the defendant for its convenience, that it might know that his passage had been paid for.

In *Gulf, etc., R. Co.* v. *Looney,* 85 Tex. 158, 34 Am. St. 787, 16 L. R. A. 471, a distinction was made between the case of a ticket over connecting railways, being a joint undertaking of the several carriers executed by one of the companies for itself and the others, for transportation within a limited time, and the case of a coupon ticket over connecting lines, limited as to time, stipulating that the selling company acted as the agent of the connecting companies and would not be responsible beyond its own line. It was held that, where the passenger through the fault of one of the intervening lines reached the beginning of the last line after the limited time had expired, he would be entitled upon such joint ticket to passage on the last line, but in the other case, wherein each coupon became the separate contract of the line for which it was issued, he would not be entitled to passage on the last line. The court, referring to the case presented by the plaintiff's petition, which was held sufficient on demurrer, said: "A joint undertaking having been shown by the petition of all the connecting lines to transport the plaintiff from Birmingham, Alabama, to Cameron, Texas, the limitation of the time in the ticket also applied to the time within which the journey should be commenced at Birmingham; and the plaintiff having commenced his journey within the time prescribed and continued the same, without a stop-over, to McGregor, he was entitled to be transported by defendant from McGregor to Cameron, notwithstanding the limitation to his ticket had expired when he reached McGregor. 2 Wood's Railway Law, pp. 1397,

1398; *Lundy* v. *Central Pacific R. Co.,* 66 Cal. 191, 4 Pac. 1193, 56 Am. Rep. 100."

In *Gulf, etc., R. Co.* v. *Henry,* 84 Tex. 678, 19 S. W. 870, 16 L. R. A. 318, it is said in the course of the opinion: "The right of plaintiff was to travel by one continuous journey from Brenham to Ballinger on such trains on appellant's road as carried passengers and made connection between those places, and this continuity would not be broken by any delay or change of cars made necessary by the conduct of appellant's business."

In *Lundy* v. *Central Pacific R. Co., supra,* the Union Pacific Railroad Company sold to the plaintiff a single through ticket from Omaha to San Francisco, "not to be good for passage after nine days from date of sale, March 12, 1874." The plaintiff boarded a train of the Union Pacific Railroad Co. on March 21st, and that company accepted the ticket and transported him to Ogden, where its line connects with that of the defendant, whose railroad extended from Ogden to San Francisco. The contract for carrying him from Omaha to San Francisco was made by the Union Pacific Railroad Company by authority of the defendant. At Ogden, where he so arrived March 24, 1874, he on the same day went on board the connecting train of the defendant. When he presented his ticket he was told by the conductor that the time had expired, and upon his refusal to pay fare from Ogden to San Francisco, he was expelled. It was said by the court, that "it was only required of the plaintiff that he present himself at the cars of the Union Pacific Railroad Company, or of the defendant, and take passage at any time within nine days from the 12th day of March, 1874. The plaintiff took passage on the 21st of the same month, and was illegally ejected from the cars of defendant by its servant on the morning of the 25th following." See, also, *Georgia, etc., R. Co.* v. *Bigelow,* 68 Ga. 219; *Ward* v. *New York, etc., R. Co.,* 9 N. Y. Supp. 377.

The case of *Mitchell* v. *Southern R. Co.* (Miss.), 27

South. 834, relied on by the appellant in argument, is distinguishable (as is clearly indicated in the court's opinion) from the case at bar and the cases above cited. We find no error in the rulings of the court below upon the pleadings.

On the trial, it appeared in the testimony that at the Indianapolis depot the appellee walked into the passageway and presented the ticket. The gateman took it and looked at it, and said: "That ticket is no good." The appellee said: "How is that?" The gateman said: "It's run out, and that is all there is to it." The appellee could not remember what he said, but he made some objection. The gatekeeper said: "There is no use; get out of the way, and let other passengers through." This was at about 12:20 a. m. The appellee had arrived at 11:20 p. m. and this was the first train thereafter. The appellee stood aside and waited till the crowd got through. Other people made objection. The conductor came up and said: "That ticket I would not accept, if you got on the train." The gatekeeper did not let him through. There was a large crowd of people standing about, who heard what was going on between the appellee and the gateman and the conductor. He was not acquainted with any of the persons standing about, but afterwards became acquainted with one of them. He was put to the expense of twenty cents for a place to lodge and eat. He traveled from Indianapolis to Lafayette on a freight train on the appellant's road, leaving the former place about 1 o'clock p. m. and arriving at his destination about 3 o'clock p. m. of the 7th, his passage costing him two cigars given by him to a brakeman, the cigars having cost him ten cents. He rode about forty miles in a freight car, when upon the order of the conductor the appellee and others who were in the car got out. He talked with the conductor, and under his direction he rode the remainder of the way on the bumpers between two freight cars. When testifying in relation to what took place between him and the gateman and the conductor at the gateway he was permitted over objection to testify

that he felt ashamed. It is contended that this ruling was error, and that the damages are excessive.

· The appellee is to be regarded as being a passenger at the time he was seeking to pass through the gateway when he was ordered out of the passageway. The ticket which he presented was good, and entitled him to be carried and to be treated with the courtesy due from the servants of a public carrier of passengers toward one whose rights as a passenger are unquestioned. We can not see substantial distinction in the matter of damages between such a case and one involving the wrongful ejection of a passenger from a train. The humiliation suffered by the passenger as part of the effect of the wrong is in this State an element in the measure of damages. It should not be considered necessary, in order to entitle the passenger to recover for his humiliation, that he resent it and require the application of physical force to his person before yielding to the wrongful requirements of the carrier's servants. If the courts will not afford redress for such wrongs, the incentive to resist or to seek redress by the employment of force is increased. Where, as here, the amount of compensatory damages in such case can not be said to be excessive through improper motives of the trior, it will be permitted to stand. *Jeffersonville R. Co.* v. *Rogers,* 38 Ind. 116, 10 Am. Rep. 103; *Toledo, etc., R. Co.* v. *McDonough,* 53 Ind. 289; *Cincinnati, etc., R. Co.* v. *Eaton,* 94 Ind. 474, 48 Am. Rep. 179; *Indianapolis, etc., R. Co.* v. *Howerton,* 127 Ind. 236; *Louisville, etc., R. Co.* v. *Wolfe,* 128 Ind. 347, 25 Am. St. 436; *Chicago, etc., R. Co.* v. *Graham,* 3 Ind. App. 28, 50 Am. St. 256; *Lake Erie, etc., R. Co.* v. *Close,* 5 Ind. App. 444; *Chicago, etc., R. Co.* v. *Conley,* 6 Ind. App. 9; *Lake Erie, etc., R. Co.* v. *Arnold,* 8 Ind. App. 297; *Pittsburgh, etc., R. Co.* v. *Berryman,* 11 Ind. App. 640; *Baltimore, etc., R. Co.* v. *Worman,* 12 Ind. App. 494; *Evansville, etc., R. Co.* v. *Cates,* 14 Ind. App. 172; *Louisville, etc., R. Co.* v. *Goben,* 15 Ind. App. 123.

Judgment affirmed.