[L. A. No. 7084. In Bank.—October 23, 1923.]

LAWRENCE C. COSEY, an Infant, etc., Respondent, v. LOS ANGELES RAILWAY CORPORATION, Appellant.

[1]   Negligence — Personal Injuries — Verdict — Discretion — Appeal—New Trial.—In cases of damages for personal injuries, where the amount of the verdict or decision is left to the sound discretion of the jury, or to the trial court, on appeal the award may not be reduced or a new trial granted upon the ground that it is excessive except where it appears the amount is the result of passion or prejudice.

[2]   Carriers—Unlawful Ejection of Passenger—Mental Suffering—Inferences.—In an action for damages resulting from the

---

2.   Mental suffering as an element of damages for wrongful expulsion from vehicle of common carrier, notes, 2 Ann. Cas. 55; 12 L. R. A. (N. S.) 184.

unlawful ejection of a passenger from a street-car, with unnecessary force, mental suffering on the part of the passenger may be inferred from the nature of the wrongful acts.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher and J. Karl Lobdell for Appellant.

Afue McDowell for Respondent.

LAWLOR, J.—The plaintiff, Lawrence C. Cosey, by his guardian *ad litem,* Lawrence C. Cosey, father of plaintiff, brought this action against the defendant, the Los Angeles Railway Corporation, a street-car company in the county of Los Angeles, for damages for personal injuries. Issue was joined on an amended complaint and amended answer and the case was tried by the court sitting without a jury. Findings of fact and conclusions of law were filed and judgment entered in favor of plaintiff. A motion for a new trial was interposed and denied. Defendant appeals.

Respondent at the time of the injury was eighteen years of age. He is a negro boy, employed at the time by a contractor as a laborer. On July 19, 1920, he became a passenger on one of appellant's cars on South Vermont Avenue at the intersection of West Sixth Street. The car was so constructed that the front and rear sections were open and the middle section inclosed, the three sections containing seats for passengers. A passageway extended along the middle section the entire length of the car. The only entrance to the car was by way of steps to an open doorway on the right-hand side near the rear end of the rear open section of the car. Respondent was bound for Jefferson Street and he obtained a transfer for that point. He describes himself as standing behind the rear seat, the last seat on the left-hand side, when the conductor, who kept saying "move forward," told him to go to the front end of the car. Respondent moved along the rear platform and middle aisle, as far as he could, without pushing aside other passengers, who, by filling the aisle and obstructing the passageway,

prevented him from moving farther forward. Because of this situation respondent stopped and remained standing at the forward end of the rear, open section of the car and next to the passengers who blocked the aisle. While the crowded condition of the car remained unrelieved the conductor made several other requests of respondent to move still farther forward, but he only looked at the conductor and made no answer. The conductor then told him if he did not move farther forward he would remove him from the car. To this respondent replied he could not move forward because the other passengers were blocking his way. Thereupon the conductor signaled for the motorman to stop the car, and then squeezed his way through the crowd of passengers standing between him and respondent, and, holding respondent by the arm, led him a few steps through the crowd toward the rear exit. Up to this point respondent made no resistance, but at this point, after walking a few steps, he, without speaking, stopped walking and, with his feet and arms, fastened himself to the seats and upright bars, so that after considerable tugging and pulling on respondent the conductor was unable to move him. The latter again signaled for the motorman to come to his assistance; the motorman squeezed through the crowd, rushed up to respondent, and the two men, "with great force, violence and roughness," seized his arms, body, and clothing, in various grips and holds, the motorman seizing his coat from the rear, by the collar; the two men "severely jerking, knocking, bumping, pulling and tugging" respondent, forced him through the crowd of passengers, on to the rear platform and down the steps, in such "rough, forceful and exciting manner" that he was rendered helpless, fell from the platform down the steps to the ground, "striking, bumping, lacerating, and bruising his leg and feet on the steps, and his arm and knuckles on the iron work of the car, as he fell to the ground." Still holding a bar at the side of the car, respondent attempted to board the car again, and in this attempt, and while he was standing on the ground with one foot on the lower step of the car (the motorman being on the platform) the motorman, without warning, suddenly and quickly, and with "great force and violence, and roughness," administered to respondent a severe kick in the chest, flesh, and muscles, and while he was still on the ground

tried to strike him with the controller-bar. Other passengers reprimanded the conductor and motorman for their conduct, while respondent requested the conductor to either allow him to ride or refund the fare to him. He then boarded the car and the fare was refunded, he gave the refunded fare to the conductor, who accepted it and allowed him to continue on his journey. Respondent resumed the same position he first occupied on the car, the car being in the same crowded condition.

According to the evidence, respondent was unable to comply with the directions of the conductor to move farther forward and hence there was no justification for ejecting him from the car and treating him in the manner described by the evidence. The incident occurred about 5 o'clock in the evening. Respondent was about three miles from his destination. The car was crowded. Respondent stated "it was absolutely full" and that he could not "step in there without tramping over other passengers." He suffered from bruises on his hands and legs when he fell from the platform. His mother testified that she treated him for bruises on the neck and legs when he came home that night, and that he had a headache. As to the effect of the kick in the chest, she testified that when he came home his "chest was hurting" and the doctor was called, that he was in bed some, and that whenever he did any regular or steady work thereafter this pain bothered him; that previous to this injury he was a healthy boy and never complained of anything. The doctor testified that there was a swelling in the chest which he described as "a contusion on the pectoral muscles," that this was the chief injury and that he made no notes of any other injury. He could discover no broken bones by superficial examination and said that it would take three weeks for recovery from such an injury to the nerve and muscle tissues. He expressed the opinion that an X-ray would have shown whether or not there were any injuries to the bone coverings, that is periostitis, and that in case of such "secondary inflammation" it would be six months before the pain in the chest might be relieved. Respondent testified he suffered pain in his chest more or less for six months after the injury and up to the time of the trial. In view of the findings it must be assumed the court gave damages for future suffering, that respondent suffered from his

injuries for more than six months and would continue to suffer therefrom for some time in the future.

The court found that at all times respondent conducted himself in an orderly manner and that at no time was there sufficient room or accommodations for all of the passengers or for respondent, and that on no part of the car were there any printed or posted rules or regulations "regarding conduct of passengers relative to standing in said car or relative to moving in said car." The court further found that the "acts of force, violence, knocking, jerking, pushing, pulling, tugging, kicking, bumping, and forcing were unlawful, unnecessary, without justifiable cause or excuse"; that as a result of which respondent suffered and underwent, and for an indefinite period will yet suffer and undergo, great embarrassment, shame, and humiliation, much pain, physical and mental suffering; that he was compelled to engage the services of a physician; that for four days after receiving the injuries respondent was unable to do any work as a laborer; that on the fifth day he returned to his employment and worked for several days; that after several days he was obliged to stop work again, and that thereafter he suffered so from said pain and disability he was not physically able to work for many days thereafter, thereby losing wages he would have earned, and that occasionally he still suffers pain and physical disability. The court then finds against the allegations of the amended answer that respondent carelessly or negligently resisted the efforts of the conductor and motorman to remove him from the car, or that he was obstructing the passageway or interfering with the other passengers; that it is not true he used unnecessary physical force or violence, or that he acted without care and caution for his own safety and protection, but that he did use care and caution for his own safety and protection as allowed and sanctioned by law.

The judgment was for $1,000—$10 for medicines, $15 for doctor's services and $975 for physical and mental pain, suffering, and disability, and for humiliation. An appeal was taken to the district court of appeal for the second appellate district, where an alternative judgment was rendered—that unless within thirty days respondent filed a stipulation remitting $500 the judgment would stand reversed. (*Cosey* v. *Los Angeles Ry. Corp.,* 40 Cal. App. Dec.

388.)   Respondent declined to make the stipulation and his petition for a hearing herein was granted.

It is claimed by appellant that "The damages awarded are grossly excessive and the implied findings of the court as to the amount of damages sustained are not supported by but are contrary to the evidence." It will appear from what we shall quote from appellant's brief that its position is not altogether consistent with the above-quoted claim. After reviewing the evidence, the findings and the authorities, the brief states: "We have always felt most aggrieved by the findings of the court, on the issue as to whether plaintiff was unduly and unnecessarily obstructing the passage of the car, and also on the issue of the quantum of force employed. Since the findings of the court on those issues are supported by the testimony of the plaintiff, we cannot successfully attack them here. Under the findings of the trial court the defendant was responsible for the injuries produced by the kick, and for the humiliation, if any, which the plaintiff sustained by being removed from the car, and then permitted to ride upon it. As we have shown, he was away from his work about four days, and incurred, according to his testimony, $25 expense. Both in reason and under the authorities $200 in excess of the actual damages sustained would have been amply sufficient compensation. We respectfully submit that unless the plaintiff is willing to remit everything in excess of that amount, the judgment should be reversed and a new trial awarded.

"We do not wish to be misunderstood. We should very much prefer to have an outright reversal. We do not agree with the learned judge in his findings on the facts and we have always felt that where the verdict or judgment rendered was excessive such fact was in itself evidence of sufficient bias for or against one party to the action to warrant all issues being retried by an impartial tribunal. However, candor toward this court compels us to concede that such is not the rule, where the damages, though excessive, are not so grossly excessive as to be conclusive evidence of bias, or prejudice against one party or the other, and that where the verdict is excessive and such excess may be due to an error of judgment, instead of passion or prejudice, that judgment will not be set aside, but the damages awarded simply reduced. Since we believe this case falls in the latter

class, we cannot conscientiously urge that we are entitled to more than a remission of a portion of the judgment. We do earnestly insist—and, we believe, correctly—that the amount awarded in this case is out of all proportion to any possible injury, mental and physical, suffered by the plaintiff, and for this reason that the verdict should either be reversed or the plaintiff required to remit at least three-fourths of the judgment.

"We fully recognize the rule that the trial court is the one to determine all questions of fact, and that ordinarily the amount of damages to be awarded for pain, humiliation, etc., is a matter within the discretion of that court. It is an equally well-established rule that where the damages awarded are out of all proportion to the injuries proved, that the award will be set aside upon an appeal. . . . We feel aggrieved not only at the amount of the verdict, but also at the decision of the court upon the issue as to defendant's liability. We recognize, however, that under the well-settled rules the determination of the trial court upon the issue of liability is conclusive, because the evidence was conflicting. But we do feel that the damages awarded are so entirely disproportionate to any injuries proven, that we would have been derelict in our duty to our client, as well as to the public, if we did not appeal to this court for relief."

We have quoted somewhat extensively the language of appellant's brief in order that its position may clearly appear. Its contention is limited to the proposition that the amount of the judgment should be reduced—not upon the ground of "excessive damages, appearing to have been given under the influence of passion or prejudice" (subd. 5, sec. 657, Code Civ. Proc.), but upon the ground that the excessive amount is "due to an error of judgment" of the trial court.

There is a multitude of authorities in this state to the effect that in actions for damages for personal injuries, where the amount of the award is left to the sound discretion of the jury, or of the court if the case is tried without a jury, the award made in the trial court is conclusive on appeal unless the amount appears to have been given under the influence of passion or prejudice. In the early case of *Aldrich* v. *Palmer*, 24 Cal. 513, the rule was thus declared: "In actions for personal torts the law does not attempt to

fix any precise rules for the admeasurement of damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury. Their verdict, as in all other cases, is subject to review by the Court, but it will never be disturbed unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate consideration of the jury. . . . Where the law furnishes no rule for the measurement of damages, their assessment is peculiarly the province of the jury, and the Court will never interfere with their verdict merely on the ground of excess. Upon such a question the Court has no right to substitute its opinion for that of the jury, merely because it happens to differ from theirs.'' We quote from Hayne on New Trial and Appeal, revised edition, volume 1, section 95, page 460: ''Damages of this character are within the exclusive province of the jury, and its conclusion is not subject to review merely because the amount is in excess of what is justified by the evidence, or what the court itself, or another jury, would perhaps have fixed. It is only when the jury disregards the evidence, and gives damages in excess of that which may be said to be fairly sustained by the evidence, under the influence of passion or prejudice, that its action is subject to review on motion for new trial.''

In the recent case of *Mohn* v. *Tingley,* 191 Cal. 470, 492 [217 Pac. 733], it was said: ''It is clear that the question of whether or not a verdict is arrived at because of passion or prejudice in cases where the amount of the judgment is in the sound discretion of the jury primarily one for the trial court upon a motion for a new trial based upon that ground (1 Hayne on New Trial and Appeal, p. 446; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83]). If a motion for a new trial upon this ground is denied by the trial court, we cannot reverse the judgment unless the amount thereof is 'so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury.' (*Hale* v. *San Bernardino etc. Co., supra.*) ''

[1] It is, therefore, settled law in cases of damages for personal injuries, where the amount of the verdict or decision is left to the sound discretion of the jury, or to the

trial court, that on appeal the award may not be reduced or a new trial granted upon the ground that it is excessive except where it appears the amount is the result of passion or prejudice.

Since it is conceded that the findings of liability based on a conflict in the evidence must be accepted, that it is not claimed the amount of the award is the result of passion or prejudice, and that the assignment of error of judgment on the part of the trial court in fixing the amount is not reviewable on appeal, it follows that the award cannot be disturbed. The trial court was faced with the fact that of all the passengers on the car this respondent alone was directed to move to the other end, and under all the facts and circumstances presented the court probably concluded that in offering resistance the boy did no more than stand on his legal rights. In connection with the character and extent of respondent's injuries we may note appellant's contentions that his ''claim for humiliation should not be taken seriously. . . . Plaintiff at no time testified that he was frightened, humiliated or shamed. His conduct does not show that he could have suffered very sharply from any of these mental afflictions. . . . To say that this eighteen year old boy is entitled to $975 or $900 for pain and suffering, humiliation, feelings because of his ejection, is, we believe, stating an utter absurdity. . . . But that this negro boy suffered any humiliation in this transaction that could not be fully compensated for by a payment of $50 to $100 is to display utter ignorance of the psychology of eighteen.'' It is also argued that the injury to respondent's feelings could not have been ''very extensive,'' because he was up and about two days afterward and rode on the same car, and was seen by the same conductor and motorman. It is true respondent did not testify that he suffered from shame and humiliation. However, under the evidence it cannot be maintained that humiliation and shame could not have been inferred by the trial court.

[2] An examination of the cases in which damages have been awarded for mental suffering caused by the unlawful ejection of a passenger from a train or street-car, with unnecessary force, shows that such suffering may be inferred from the nature of the wrongful acts. In *Chicago & Northwestern Ry. Co.* v. *Chisholm*, 79 Ill. 584, the court held that

192 Cal.—18

where a party who is rightfully on a railroad car and has paid his fare is forcibly and unlawfully ejected therefrom in the presence of other passengers, a jury may properly find from such facts that the party thus ejected suffered feelings of shame and humiliation, without further proof on that subject.   In *Brown* v. *Hannibal & St. Joseph R. R. Co.,* 99 Mo. 310 [12 S. W. 655], it was said: "Facts which are necessarily implied from those alleged need not be stated. . . . Physical pain and mental anguish usually, and to some extent necessarily, flow from or attend bodily injuries.   It is not necessary to make specific proof of pain and mental anguish.   These elements of damage are sufficiently shown by the evidence which discloses the nature, character and extent of the injuries.   From such evidence, the jury may infer pain and mental anguish."   In *Cleveland, C. C. & St. Louis Ry. Co.* v. *Kinsley,* 27 Ind. App. 135 [87 Am. St. Rep. 245, 60 N. E. 169], it was held that a passenger who is wrongfully denied admission to a train may recover for humiliation though he yields to such denial without requiring the exercise of force by the employees of the railroad.   In *Missouri Ry. Co.* v. *Kaiser,* 82 Tex. 144 [18 S. W. 305], it was held that the ejection from a train of a sixteen year old girl in a small town where she was an entire stranger was "well calculated" to cause mental suffering.

The conclusion arrived at renders it unnecessary to consider all the authorities cited by appellant in support of its claim that the award was excessive, or to further state appellant's arguments as to the evidence.

Judgment affirmed.

Wilbur, C. J., Waste, J., Kerrigan, J., Seawell, J., Lennon, J., and Myers, J., concurred.